IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

COBREY BENNETT and         :
MARYAM BENNETT,        :
                                  :
    Plaintiffs,             :
                                  :
v.                         :       Civil Action No.
                                  :       2:13-CV-00243-WCO-JCF
OCWEN LOAN SERVICING, LLC, :
                                  :
    Defendant            :

## <u>NON-FINAL REPORT AND RECOMMENDATION</u>

This case comes before the Court on Ocwen Loan Servicing, LLC's Partial Motion to Dismiss (Doc. 19) and Plaintiffs' Motion to Add Joinder of Claims (Doc. 22), Motion for Sanctions (Doc. 55), and Motion for Leave to File Amended Complaint (Doc. 56). It is **RECOMMENDED** that Ocwen's Partial Motion to Dismiss (Doc. 19) be **GRANTED in part and DENIED in part**. In particular, the undersigned **RECOMMENDS** that all of the claims asserted in the Second Amended Complaint (Doc. 16) be **DISMISSED** except for Plaintiffs' claims for RESPA violations (Count VIII), conversion (Count IX), and punitive damages (Count XVI). It is further **RECOMMENDED** that Plaintiffs' Motion to Add Joinder of Claims (Doc. 22), Motion for Sanctions (Doc. 55), and Motion for Leave to File Amended Complaint (Doc. 56) be **DENIED**.

# BACKGROUND and PROCEDURAL HISTORY[1]

This case arises out of Ocwen Loan Servicing, LLC's ("Ocwen") administration and servicing of Plaintiff Cobrey Bennett's mortgage loan. On November 19, 2012, Mr. Bennett obtained a mortgage loan for $284,900.00 from Mortgage Services III, LLC, secured by property at 965 Summerfield Drive, Cumming, Georgia 30040, and evidenced by a Promissory Note ("the Note") executed in favor of Mortgage Services and its successors and assigns, promising to repay the loan amount. (*See* Doc. 19-2 at 2). Also on that date, Mr. Bennett and Mrs. Bennett signed a Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Mortgage Services and its successors and assigns, (Doc. 1-1 at 1), and Ocwen obtained the rights to service the loan from another creditor. (Doc. 16 at ¶ 5). The terms of the Note required Mr. Bennett to

---

[1] These facts are taken from Plaintiffs' Second Amended Complaint (Doc. 16), and from copies of documents referred to in the Second Amended Complaint that relate to Ocwen's servicing of the loan, which are attached as exhibits to the original Complaint (Doc. 1) or to Ocwen's partial motion to dismiss (Doc. 19). In ruling on a motion to dismiss, the court may consider documents attached to the motion and response if those documents are central to the complaint and not in dispute. *See Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Okim v. Bank of Am.*, No. 1:12-cv-01759-TWT-GGB, 2012 U.S. Dist. LEXIS 168788, at *7 (N.D. Ga. Oct. 25, 2012) (noting that the court is authorized to consider documents attached to motions to dismiss where "the document is central to Plaintiff's claims, and the authenticity of the document has not been challenged"). The Court may also take judicial notice of public records, such as real estate records and court filings. *See Universal Express, Inc. v. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (unpublished opinion).

make a principal and interest payment the first day of each month beginning January 1, 2013. (Doc. 19-2 at 2). If he failed to do so, Mortgage Services could charge a late fee in the amount of 4% of the overdue amount of each payment. (*Id.* at 3).

From the start, Mr. Bennett struggled to make loan payments on time − his January payment was over two weeks late, and he provided no payments in February. (Doc. 16 at ¶ 6). So in a February 18, 2013 account statement, Ocwen informed Mr. Bennett that the current amount due by March 1, 2013 was $3,498.95 – $3,470.92 for his February and March loan payments, and $28.03 in late charges. (Doc. 1-2 at 30). On March 6, 2013, Mr. Bennett provided Ocwen with $1,735.46, but since that payment did not satisfy the amount owed, Ocwen had a representative from CoreLogic visit Mr. Bennett's home on March 25th to perform a property inspection, and it charged the inspection fee to his account. (Doc. 16 at ¶¶ 6-7). According to Plaintiffs, when they questioned Ocwen about the charge, it "claimed they were in the process of foreclosure, because [Plaintiffs'] account was more than 60 days past due." (*Id.* at ¶ 7). The day after the inspection, Mr. Bennett submitted another payment of $1,735.46. (*Id.* at ¶ 6).

Mr. Bennett failed to make his April payment on time, so on April 8, 2013, Ocwen sent him a mortgage account statement informing him that the amount past due was $1,735.46 and that the total amount due was $3,492.67. (Doc. 1-2 at 44).

Mr. Bennett submitted a payment of $1,735.46 on April 17, 2013, but the next day Ocwen informed him by letter that it "ha[d] not yet received [his] loan payment for the month. The total amount due is now $1,757.21, which may include additional unpaid items." (*Id.* at 41). Near the end of the month, Plaintiff Maryam Bennett sent a Qualified Written Request to Ocwen "to try and clear the dispute of the amount owed to Ocwen." (Doc. 16 at ¶ 11).

In early May 2013, Ocwen sent Mr. Bennett a notice, in which it asserted that "Your mortgage payment is now more than 30 days past due. The total amount due is $3,492.67." (Doc. 1-2 at 47). Days later, after Mr. Bennett provided a payment of $1,735.46, Ocwen sent yet another notice informing him that it "ha[d] not yet received [his] loan payment for this month" and that, as of May 18, 2013, a late fee of $69.41 had been charged, bringing the total amount due to $1,735.46. (*Id.* at 53). In response, Mr. Bennett posted a complaint online with the Consumer Financial Protection Bureau, asserting that Ocwen "ha[d] been harassing us about late payments by calling 6 days of the week several times a day," even though he had "told them that I have proof of all the payments we have made and the cancelled checks to prove we are not behind"; charged a home inspection fee without his consent; and assessed a late fee on a payment that was not late. (Doc. 1-3 at 4). Ocwen responded to the complaint on June 11, 2013, explaining that "[Mr. Bennett's] loan recently transitioned from our Ocwen servicing center in

Orlando, Florida to our Ocwen servicing center in Waterloo, Iowa," and that the "monthly payments were being processed at [the] Florida office and later forwarded to the Waterloo, Iowa office," which made it appear as if "[Mr. Bennett's] loan was delinquent." (*Id.* at 10). Ocwen further asserted that, to avoid future delays, Mr. Bennett should remit his payments to the proper address; that the property inspection fee, assessed to the account on March 26, 2013, had been waived; and that, as of June 11, 2013, there were no late charges or outstanding fees on the account. (*Id.*).

By June 18, 2013, Mr. Bennett had not submitted his June payment, so Ocwen sent him a notice stating that it had not yet received any payments and had assessed a late fee of $69.41, bringing the total amount due to $1,735.46. (Doc. 1-2 at 61). On July 3, 2013, Ocwen informed Mr. Bennett that his mortgage payment was now more than 30 days past due, and that the total amount owed was now $3,470.92. (*Id.* at 63). Before the end of July, Mr. Bennett submitted two payments of $1,735.46. (Doc. 16 at ¶¶ 22, 25).

In early August, Plaintiffs sent Ocwen "a demand to void the loan, due to the multiple acts of Bad Faith shown by [Ocwen]. The Plaintiffs also informed [Ocwen that] if the loan was not voided, they would file suit." (*Id.* at ¶ 27). A few days later, Ocwen sent Mr. Bennett a notice, which stated that it "had not yet

received" his August loan payment and had assessed a late charge of $69.41. (Doc. 1-2 at 77).

On September 6, 2013, Mr. Bennett received a statement from Ocwen that showed that he owed over $7000. (Doc. 1-2 at 86). Over a week later, Mrs. Bennett spoke with Tammy Versluis, an Executive Account Manager for Ocwen, who stated "everything with [Plaintiffs'] account was accurate, and that the reason [the] account kept showing as delinquent is because [Plaintiffs'] were sending [their] payments to the wrong address." (Doc. 16 at ¶ 33).

In late September, Plaintiffs, proceeding *pro se*, filed this action against Ocwen in the State Court of Forsyth County. (Doc. 1-2 at 1-23). Ocwen removed the action to this court (Doc. 1), and shortly thereafter Plaintiffs submitted an Amended Complaint. (Doc. 6). Two weeks later, Plaintiffs sought leave from the Court to file yet another amended complaint, (Doc. 9), which the Court granted on November 26, 2013. (Doc. 15). The Second Amended Complaint (Doc. 16) remains the operative pleading at this time, and in it Plaintiffs assert the following causes of action: (1) violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count I); (2) negligence (Count II); (3) intentional infliction of emotional distress ("IIED") (Count III); (4) unfair practice (Count IV); (5) rescission due to fraud (Count V); (6) violations of O.C.G.A. §§ 7-1-1013(6) and (9)(A-C) (Count VI); (7) breach of fiduciary duty (Count VII); (8) violation of

the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (Count VIII); (9) conversion (Count IX); (10) tortious interference with property rights (Count X); (11) violations of the Georgia RICO act (Count XI); (12) fraud and deceit (Count XII); (13) attorneys' fees and expenses (Count XIII); (14) rescission due to fraud (Count XIV)[2]; (15) punitive damages (Count XVI).[3] (*See generally id.*).

In December 2013, Ocwen filed a partial motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 19). It seeks to dismiss all of Plaintiffs' claims in the Second Amended Complaint except for their claim under RESPA (Count VIII). (*See id.*). Plaintiffs responded to the motion to dismiss (Doc. 21) and also filed a motion to add joinder of claims (Doc. 22), construed by the court as a motion to amend. They seek to add claims for loss of consortium, conspiracy, and rescission. (*Id.* at 1-4). That motion was fully briefed by the parties. (Docs. 27 and 32).

Months later, after the court had stayed discovery pending the resolution of the partial motion to dismiss (Doc. 48), Plaintiffs submitted a motion for sanctions against defense counsel (Doc. 55) and yet another motion to amend (Doc. 56). In that motion to amend, Plaintiffs seek to drop Counts V, VI, and XIV from their

---

[2] Count XIV of Plaintiffs' Second Amended Complaint simply repeats Count V. (*See* Doc. 16 at ¶¶ 66, 100).
[3] Plaintiffs' Second Amended Complaint does not contain a Count XV. (*See* Doc. 16 at pg. 24).

Second Amended Complaint and add claims for quiet title and loss of consortium. (*Id.* at 2).

## DISCUSSION

### I.    Ocwen's Partial Motion To Dismiss

#### A.    Applicable Pleading Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." To state a claim that can survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678-79.  To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

To survive a motion to dismiss, a complaint "does not need detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Furthermore, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (explaining that "[t]o survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed" (internal quotation omitted)).

"Additionally, because Plaintiffs are acting pro se, their 'pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.' " *Shields v. Bank of Am.*, No. 2:11-CV-00267-RWS, 2012 WL 763121 (N.D. Ga. Mar. 6, 2012) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). " 'This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action.' " *Id.* (quoting *Thomas v. Pentagon Fed. Credit Union*, 393 Fed. Appx. 635, 637 (11th Cir. 2010)).

### B. Plaintiffs' Claims

#### 1. Abandoned Claims

As a preliminary matter, Ocwen moved to dismiss Plaintiffs' claims for unfair practice under O.C.G.A. §§ 10-1-372 & 10-1-373 (Count IV) and "Rescission Due to Fraud" (Counts V and XIV) for failure to state a claim. (Doc. 19-1 at 11-12). In response, Plaintiffs state that they wish to withdraw those causes of action. (Doc. 21 at 4). Consequently, Plaintiffs' unfair practice and "Rescission Due to Fraud" claims (Counts IV, V, and XIV) are deemed abandoned. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned where claim was presented in complaint but not raised in initial response to motion for summary judgment); *see also Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 892 (11th Cir. 1999) ("[A]ssertions made in the pleadings (*e.g.,* complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court … in ruling on the motion for summary judgment.").

### 2.    FDCPA Violation

Plaintiffs allege that Ocwen is a debt collector, and thus liable under the FDCPA, because it "regularly attempts to collect debts allegedly due through the use of the USPS and/or telephones in interstate commerce, and because the servicing rights to the loan were acquired while [Plaintiffs were] in default from previous lender." (Doc. 16 at ¶ 55). Ocwen, on the other hand, contends that it is

not a debt collector, and thus not liable under the FDCPA, because it acquired the

servicing rights to Plaintiffs' loan well before the loan defaulted.  (Doc. 19-1 at 7).

To prevail on a FDCPA claim, a plaintiff must show that:

(1) he has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Buckley v. Bayrock Mortg. Corp.*, Civil Action File No. 1:09-CV-1387-TWT, 2010

WL 476673, at *6 (N.D. Ga. Feb. 5, 2010) (quotation omitted).  A "debt collector"

is "any person who uses any instrumentality of interstate commerce or the mails in

any business the principal purpose of which is the collection of any debts, or who

regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."   15 U.S.C. § 1692a(6).   The FDCPA

explicitly exempts from the definition of debt collector "any person collecting or

attempting to collect a debt owed or due ... another to the extent such activity ...

(iii) concerns a debt which was not in default at the time it was obtained by such

person."  15 U.S.C. § 1692a(6)(F).  "This exclusion has been interpreted by courts

to mean that mortgage servicers are not covered by the FDCPA if they began

servicing the loan at a time when it was not in default."  *Stroman v. Bank of Am.*

*Corp.*, 852 F. Supp. 2d 1366, 1375-1376 (N.D. Ga. 2012) (collecting cases); *see*

*also Gladstein v. Aurora Loan Services, LLC*, Civil Action No. 1:11–CV–02784–

11

TWT–LTW, 2012 WL 3758160, at *6 (N.D. Ga. Aug. 2, 2012) ("Courts have interpreted this exclusion to mean that a mortgage servicer is not covered by the FDCPA if the servicer began servicing the debt when it was not in default.") (citation omitted), *adopted by* 2012 WL 3758157 (N.D. Ga. Aug. 28, 2012).

Consequently, the proper inquiry here is whether Ocwen obtained servicing rights to the loan before it went into default. Plaintiffs allege in their Second Amended Complaint that Ocwen received the servicing rights on November 19, 2012, and that the loan was in default at that time. (Doc. 16 at ¶ 5). Ordinarily, a court must accept the facts in the complaint as true when considering a motion to dismiss; however, if those facts are general and conclusory, and contradicted by facts presented in an exhibit, then the exhibits govern. *See Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) ("It is the law in this Circuit that 'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.' ") (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007)); *see also Dynott v. Nationstar Mortg., LLC*, No. 1:13–cv–1474–WSD, 2014 WL 1028886, at *7 (N.D. Ga. Mar. 17, 2014) ("[T]he Eleventh Circuit has made it clear that when a plaintiff attaches exhibits to a complaint and the exhibits contradict the allegations of the complaint, the exhibits control.") (citing *Griffin*, 496 F.3d at 1205–06); *see also Lane v. Wells Fargo Home Mortg.*, Civil Action No. 1:10–CV–2385–RWS, 2010 WL 5087855, at *2 (N.D. Ga. Dec. 7,

2010) ("While the Court is compelled to accept the facts in the Complaint as true in considering a motion to dismiss, those alleged facts can be trumped by contradictory facts presented in an exhibit or attachment to the pleadings.") (citing *Indulgence Yacht Charters Ltd. v. Ardell Inc.*, No. 08–60739, 2008 WL 4346749, at *4 (S.D. Fla. Sept. 16, 2008)). Here, unlike most of the other allegations in the Second Amended Complaint, Plaintiffs cite no evidence from the nearly 200 pages of Exhibits to support their contention that the loan was in default when Ocwen received servicing rights. (*See* Doc. 16 at ¶ 5). Moreover, Plaintiffs' allegations on this point are contradicted by the Note which shows that Plaintiffs obtained the loan on November 19, 2012 (the same day Plaintiffs allege Ocwen received the servicing rights), and that the first payment on the loan was not due until January 1, 2013. (Doc. 19-2 at 2 (attached to motion to dismiss as an Exhibit)). The Note thus reveals that Ocwen became loan servicer before Plaintiffs' first loan payment was due; consequently, the undersigned refuses to accept Plaintiffs' contradictory allegation that the loan was in default at that time. *See Lane*, 2010 WL 5087855, at *2 (refusing to accept the plaintiff's allegation that his loan was transferred to the defendant where the defendant's exhibit plainly showed that the loan had never been transferred).[4] Since Ocwen acquired the servicing rights before the loan was

---

[4] It should also be noted that, in their response to Ocwen's partial motion to dismiss, Plaintiffs ignore Ocwen's contention that it received the loan prior to default, and instead assert that "[a] federal judge held Ocwen must comply with the

in default, it is not a debt collector under the FDCPA, and Plaintiffs' claim therefore fails.

Accordingly, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiffs' FDCPA claim (Count I).

### 3. <u>Negligence</u>

Plaintiffs allege that Ocwen negligently serviced their loan because it, among other things, "fail[ed] to correct the issues that caused the account to appear delinquent, even though the Plaintiffs warned them of the errors several times and Ocwen, [sic] themselves acknowledged their error." (Doc. 16 at ¶ 57). Ocwen moves to dismiss on the grounds that Plaintiffs cannot show a legal duty. (Doc. 19-1 at 8).

Under Georgia law, the necessary elements of a negligence claim "are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." *Ceasar v. Wells Fargo Bank, N.A.*, 322 Ga. App. 529, 533, 744 S.E.2d 369 (Ga. Ct. App. 2013). To establish a negligence claim for breach of a contractual duty, a plaintiff must show that, in addition to breaching the contract, the defendant breached an independent duty imposed by law. *See Phillips v. Ocwen Loan Servicing, LLC*,

---

Fair Debt Collections Practices Act" and that "when you call Ocwen's customer service number, the pre-recorded message states 'We may be attempting to collect a debt, and any information obtained could be use for that purpose.' " (Doc. 21 at 2-3).

No. 1:12–cv–3861–WSD, 2013 WL 4854760, at *5 (N.D. Ga. Sept. 11, 2013) ("However, '[a] defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law.") (quoting *Fielbon Dev. Co. v. Colony Bank of Houston Cnty.*, 290 Ga. App. 847, 855, 660 S.E.2d 801 (Ga. Ct. App. 2008)); *see also Adams v. JP Morgan Chase Bank*, Civil Action No. 1:10–CV–04226–RWS, 2011 WL 2532925, at *4 (N.D. Ga. June 24, 2011) ("It is well settled that mere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law.") (quotations omitted).

Here, all of the duties Ocwen owed to Plaintiffs arose from the Note and Security Deed that Plaintiffs entered into with Mortgage Services. *See Phillips*, 2013 WL 4854760, at *5 (explaining that the duties loan servicer owed to the plaintiff in the servicing of his loan "ar[ose] from the Note and Security Deed Plaintiff entered into with Upland"). As a result, to survive the motion to dismiss, Plaintiffs needed to point to an independent duty created by law that Ocwen violated, yet they failed to do so. (*See* Doc. 16 at ¶¶ 57-58). In addition, it is well established that there is no independent duty to non-negligently service a loan. *See*

15

*Smith-Tyler v. Bank of Am., N.A.*, Civil Action File No. 1:12–CV–1347–TWT, 2014 WL 201040, at *5 (N.D. Ga. Jan. 16, 2014) ("To be sure, this Court has previously found that there is no duty to non-negligently service a loan.") (citing *Kynes v. PNC Mortg.*, No. 1:12–CV–4477–TWT, 2013 WL 4718294, at *11–12 (N.D. Ga. Aug. 30, 2013) (dismissing negligence claim because the plaintiff did not establish an independent duty to not negligently service a loan); *see also McGinnis v. Am. Home Mortg. Servicing, Inc.*, No. 5:11–CV–284 (CAR), 2012 WL 426022, at *6 (M.D. Ga. Feb. 9, 2012) (finding the plaintiff's allegations that the loan servicer had a duty to "service her loan in a non-negligent manner and to exercise ordinary care in the servicing of her loan" did not state a claim for negligence because "[t]hese duties … do not sustain separate tort duties outside of [the defendant's] administration of the Mortgage").

Accordingly, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiffs' negligence claim (Count II).

### 4. <u>IIED Claim</u>

To prevail on an IIED claim, a plaintiff must show: (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe. *See Hendrix v. Phillips*, 207 Ga. App. 394, 395, 428 S.E.2d 91 (Ga. Ct. App. 1993). Georgia courts have found liability for

IIED "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yarbrough v. SAS Sys., Inc.*, 204 Ga. App. 428, 429, 419 S.E.2d 507 (Ga. Ct. App. 1992). "The burden on a plaintiff asserting a claim for [IIED] is heavy." *Durley v. APAC, Inc.*, 236 F.3d 651, 658 (11th Cir. 2000).

Plaintiffs allege that Ocwen intentionally inflicted emotional distress by constantly calling and threatening them, charging them unwarranted fees, sending them "falsified statements with overblown amounts," and "refusing to correct the false reporting to the credit bureaus …." (Doc. 16 at ¶ 59). In *Stroman v. Bank of America Corporation.*, 852 F. Supp. 2d 1366 (N.D. Ga. 2012), the court addressed similar IIED allegations at the motion to dismiss stage. The plaintiff there alleged that her loan servicer sent her "billing statements with erroneous late fees and past-due balances," and " 'dunning collection letters,' some of which threatened negative credit reporting, acceleration of the loan, and foreclosure"; barraged her with calls concerning her June payment, even though she had already submitted her payment; and transmitted negative information to credit reporting agencies, even though she was never late on any payments, causing her credit score to go down and her credit card company to reduce her line of credit. *Id.* at 1371. The plaintiff brought suit against the loan servicer for IIED, but the court held that she

had failed to plead a plausible claim, reasoning that she had "not alleged the kind of 'extreme and outrageous' conduct that goes 'beyond all possible bounds of decency' and would be 'utterly intolerable in a civilized community.' " *Id.* at 1382 (quoting *Canziani v. Visiting Nurse Health Sys., Inc.*, 271 Ga. App. 677, 610 S.E.2d 660 (Ga. Ct. App. 2005)).

The same is true here. The allegations against Ocwen are almost identical to the ones alleged in *Stroman* except that, with respect to credit reporting, Plaintiffs do not allege the same kind of damage to their credit as the plaintiff in *Stroman* reported. (Doc. 16 at ¶¶ 59, 60).[5] As in *Stroman*, Plaintiffs' allegations of constant calls, threats, and unwarranted fees and charges do not show "extreme and outrageous" conduct that "goes beyond all possible bounds of decency," and are therefore insufficient to state a plausible IIED claim. *See Latimore v. Gateway Retrieval, LLC*, Civil Action File No. 1:12–CV–00286–TWT–JFK, 2013 WL 791258, at *7 (N.D. Ga. Feb. 1, 2013) (finding no extreme and outrageous conduct where defendant made phone calls and left voice mails threatening to arrest and incarcerate debtor), *adopted by* 2013 WL 791308 (N.D. Ga. Mar. 4, 2013); *Cook v. Covington Credit of Georgia, Inc.*, 290 Ga. App. 825, 828, 660 S.E.2d 855, 858

---

[5] Further weakening Plaintiffs' IIED claim is the fact that they never specify which particular fees were unwarranted, or which particular mortgage statements contained overblown amounts, omissions that are important given that Plaintiffs made several late payments (and thus could be charged late fees pursuant to the Note) and, for some months, made no payments at all. (*See generally* Doc. 16).

(Ga. Ct. App. 2008) (finding no extreme and outrageous behavior where debt collectors, after making numerous demands over the telephone, personally confronted debtor at his place of employment and used a racial epithet to insult him); *cf. Am. Fin. & Loan Corp. v. Coots*, 105 Ga. App. 849, 125 S.E.2d 689 (Ga. Ct. App. 1962) (concluding that extreme and outrageous conduct had been shown where debt collector terrorized the plaintiff and held family at gunpoint).

Even if Plaintiffs could establish extreme and outrageous conduct, their claim would still be subject to dismissal because they allege no well pleaded facts to show that they suffered severe emotional distress. Plaintiffs assert, in conclusory fashion, that Ocwen's behavior "caused severe emotional distress." (Doc. 16 at ¶ 59). But this allegation is simply a "[t]hreadbare recital[] of the elements of a cause of action" with no specific factual allegations, and consequently will not suffice to state a plausible IIED claim. *Iqbal*, 556 U.S. at 678-79; *see also Green v. Bank of Am. Home Loans, Inc.*, Civil Action No. 7:13–CV–137 (HL), 2014 WL 1673340, at *3 (M.D. Ga. Apr. 28, 2014) (dismissing IIED claim where the plaintiff's allegation was "nothing more than a recital of the IIED elements with no specific factual allegations").

Accordingly, because Plaintiffs have not alleged extreme and outrageous behavior or severe emotional distress, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiffs' IIED claim (Count III).

## 5. Plaintiffs' Claim Under O.C.G.A. § 7-1-1013

Plaintiffs allege that, by trying "to default our mortgage," Ocwen violated O.C.G.A. § 7-1-1013, the Georgia Residential Mortgage Act ("GRMA"). (Doc. 16 at ¶ 59). The GRMA provides no private right of action. *See Warthen v. Litton Loan Servicing LP*, Civil Action No. 1:11–cv–02704–JEC, 2012 WL 4075629, at *4 (N.D. Ga. Mar. 26, 2012) (dismissing the plaintiff's claim under the GRMA because no private right of action exists); *see also Jones v. Vericrest Fin., Inc.*, Civil Action No. 1:11–CV–2330–TWT–CCH, 2011 WL 7025915, at *20-21 (N.D. Ga. Dec. 7, 2011) (dismissing the plaintiff's claim under the GRMA because the GRMA does not provide a private right of action), *adopted by* 2012 WL 113556 (N.D. Ga. Jan. 12, 2012); *Kabir v. Statebridge Co., LLC*, No. 1:11–cv–2747–WSD, 2011 WL 4500050, at *9 n.13 (N.D. Ga. Sept. 27, 2011) ("Courts within this district have also found that a private cause of action does not arise under the GRMA, which does not explicitly create a private action and which contains a robust public enforcement scheme.") (citing *Jordan v. PHH Mortg. Corp.*, No. 1:10–cv–967, 2010 WL 5058638, at *7–8 (N.D. Ga. Nov. 5, 2010), *adopted by* 2010 WL 5055809 (N.D. Ga. Dec. 6, 2010)). Even if it did, O.C.G.A. §§ 7-1-1013(6) and (9)(a-c), the sections under which Plaintiffs seek relief, prohibit fraud "in connection with the attempted or actual making of, purchase of, transfer of, or sale of any mortgage loan" and prohibit lenders from making a mortgage loan with

intent to foreclose. Plaintiffs plead no facts to suggest that Ocwen was in any way connected with the origination, purchase, transfer, or sale of Mr. Bennett's loan. (*See generally* Doc. 16); *see also Jones*, 2011 WL 7025915, at *21 (finding that, even if the GRMA provided a private cause of action, the plaintiff's claim failed because she did not allege that the defendant loan servicers were in any way connected with the origination of the loan).

Accordingly, because the GRMA does not provide a private right of action, and because Plaintiffs have failed to allege that Ocwen was in any way connected with the origination, purchase, transfer, or sale of the loan, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiffs' claim under the GRMA (Count VI).

### 6. <u>Breach of Fiduciary Duty</u>

Plaintiffs allege that Ocwen violated the "fiduciary & special duties of trust and fidelity imposed on mortgage servicers" by "failing to correct errors" with its accounting. (Doc. 16 at ¶ 72). "It is well-settled under Georgia law that no fiduciary relationship exists between a borrower and a lender or its agent." *Phillips*, 2013 WL 4854760, at *7 (dismissing the plaintiff's breach of fiduciary duty claim against the loan servicer because the plaintiff "has not, and cannot, state a claim against [the loan servicer] for breach of fiduciary duty"); *see also White v. Am. Serv. Co.*, 461 Fed. Appx. 841, 843 (11th Cir. 2012) (finding that Georgia

courts have held as a matter of law that no fiduciary relationship exists between lender and borrower) (citing *Moore v. Bank of Fitzgerald*, 225 Ga. App. 122, 483 S.E.2d 135 (Ga. Ct. App. 1997)); *Jean v. Am. Home Mortg. Serv., Inc.*, No. 1:11–cv–1101–WSD, 2012 WL 1110090, at *4 (N.D. Ga. Mar. 30, 2012) (collecting cases).

Accordingly, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiffs' claim for breach of fiduciary duty (Count VII).

### 7.    <u>Conversion</u>

Plaintiffs allege that Ocwen converted their property when it failed to apply their loan payments correctly to their account, and refused to return their mortgage payments and refund "all the numerous unauthorized fees" when Plaintiffs asked it to do so.  (Doc. 16 at ¶ 81).  To allege a plausible claim for conversion, a plaintiff must show "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property."  *Capital Fin. Serv. Grp., Inc. v. Hummel*, 313 Ga. App. 278, 280–81, 721 S.E.2d 108 (Ga. Ct. App. 2011).  "Where a defendant originally obtained lawful possession of property, the plaintiff must show actual conversion or demand for the property's return coupled with the defendant's refusal to return the property."  *Kin Chun Chung v. JPMorgan Chase Bank, N.A.*,

Civil Action File No. 1:11–CV–2131–TWT, 2013 WL 5354211, at *8 (N.D. Ga. Sept. 24, 2013) (quoting *Stroman*, 852 F. Supp. 2d at 1379); *see also Williams v. Nat'l Auto Sales, Inc.*, 287 Ga. App. 283, 285, 651 S.E.2d 194 (Ga. Ct. App. 2007) (explaining that "evidence that a defendant, who has lawfully come into possession of the plaintiff's property, unlawfully refuses to return the plaintiff's property after the plaintiff demands its return, is one way to show that the defendant has exercised unauthorized dominion over the property and has thereby converted the property"); *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358, 551 S.E.2d 765 (Ga. Ct. App. 2001) ("[W]hen someone comes into lawful possession of personal property, in the absence of a demand for its return and a refusal to return the personal property, there is no conversion.") (citing *McDaniel v. White*, 140 Ga. App. 118, 119(2), 230 S.E.2d 500 (Ga. Ct. App. 1976)).

Here, Ocwen originally acquired lawful possession of Plaintiffs' loan payments and fees in accordance with the loan agreement. (*See* Doc. 19-2). Plaintiffs allege, however, that after they noticed that Ocwen failed to appropriately apply their payments to the outstanding debt, and charged them unauthorized fees, they "demanded numerous times that Ocwen return and/or apply all of their payments to the account correctly" and "refund all the numerous unauthorized fees," but Ocwen failed to do so. (Doc. 16 at ¶¶ 80, 81). On these facts, Plaintiffs have alleged a plausible conversion claim. *See Stroman*, 852 F.

Supp. 2d at 1379 (finding that the plaintiff alleged a plausible claim of conversion where she alleged that "she made her monthly mortgage payments to the [the defendants] and that the [the defendants] then failed to appropriately apply her mortgage payments to the outstanding debt"); *see also White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1371 (N.D. Ga. 2008) (reasoning that the plaintiffs stated a plausible conversion claim where they alleged "that Wachovia imposed overdraft fees when their account was not actually overdrawn; that Wachovia took money from another of Plaintiffs' accounts to cover the overdraft fee and the purported overdraft; that Plaintiffs demanded that Wachovia credit the improper overdraft fee; and that Wachovia refused to do so."); *Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1372 (N.D. Ga. 2004) (finding that the plaintiff had stated a conversion claim under Georgia law where the plaintiff alleged that loan servicer failed to properly apply loan payment to the plaintiff's outstanding loan even after the plaintiff demanded that it do so).

In opposition, Ocwen cites *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369 (M.D. Ga. 2011) and argues that "Plaintiffs' allegation that Ocwen did not give 'proper credit for payments,' and charged improper fees are insufficient" to establish wrongful possession, a necessary element of a conversion claim. (Doc. 19-1 at 15-16). But *Jenkins* is readily distinguishable from this case. Although both feature conversion claims against loan servicers that initially

obtained lawful possession of property, they differ in one critical respect: the plaintiff in *Jenkins* never demanded the loan servicer to return his money, while the Plaintiffs here did. *Compare Jenkins*, 822 F. Supp. 2d at 1378 (alleging only that the defendants "wrongfully, illegally and fraudulently converted to their own use Plaintiff's funds" and "misuse[d] and misappli[ed] ... funds in Plaintiff's escrow account") *with* Doc. 16 (alleging that Plaintiffs "demanded numerous times that Ocwen return and/or apply all of their payments to the account correctly" and "refund all the numerous unauthorized fees," but Ocwen refused). As *Kin*, *Williams*, and *Taylor* teach, when a defendant originally comes into lawful possession of property, a plaintiff must show "actual conversion or demand for the property's return coupled with the defendant's refusal to return the property." *Kin*, 2013 WL 5354211, at *8; *see also Williams*, 287 Ga. App. at 285 (explaining that a plaintiff establishes "unauthorized dominion" of property by submitting evidence that the defendant "unlawfully refuse[d] to return the plaintiff's property after the plaintiff demand[ed] its return"). Since Plaintiffs here have alleged a demand for their property's return coupled with an unlawful refusal from Ocwen, they have pled wrongful possession, and thus stated a viable conversion claim.

Accordingly, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **DENIED** as to Plaintiffs' conversion claim (Count IX).

## 8. Tortious Interference With Property Rights

Plaintiffs allege that Ocwen unlawfully interfered with their right to enjoy their property "[b]y declaring Plaintiffs, to be in default on their loan … when they in fact, were not in default on their loan, & then threatening them foreclosure." (Doc. 16 at ¶ 85). "Under Georgia law, any unlawful interference with a property right is a trespass." *McGinnis v. Am. Home Mortg. Servicing Inc.*, Civil Action No. 5:11–CV–284 (CAR), 2013 WL 3338922, at *16 (M.D. Ga. July 2, 2013) (citing *Dowdell v. Cherry*, 209 Ga. 849, 76 S.E.2d 499 (Ga. 1953)). O.C.G.A. § 51-9-1 states that "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie." To state a claim for tortious interference with property rights, Plaintiffs here must show that Ocwen " 'interfered with [their] possessory interests in the realty.' " *McGinnis*, 2013 WL 3338922, at *16 (quoting *Tower Fin. Servs., Inc. v. Mapp*, 198 Ga. App. 563, 564, 402 S.E.2d 286 (Ga. Ct. App. 1991); *see also Hamil v. Stanford*, 264 Ga. 801, 802 449 S.E.2d 118 (Ga. 1994) (holding that the trial court erred in concluding that appellant had violated O.C.G.A. § 51-9-1 where "there was no evidence that appellant ever interfered with the Stanfords' possessory interest in the realty").

Here, Plaintiffs have failed to allege a plausible claim for tortious interference with property rights. They do not allege that Ocwen physically trespassed onto their property, *see Pope v. Pulte Home Corp.*, 246 Ga. App. 120,

26

539 S.E.2d 842 (Ga. Ct. App. 2000) ("A person commits trespass when he knowingly and without authority enters upon the land of another after having received prior notice that such entry is forbidden."), but instead claim that Ocwen's threats to foreclose interfered with their property interest. (Doc. 16 at ¶ 85).[6] Yet critically, Plaintiffs fail to show how Ocwen interfered with their right to possession – they never allege to have lost physical possession of the property during the period relevant to this lawsuit or to have had their legal title affected by Ocwen's foreclosure threats. *See Hamil*, 264 Ga. at 802 (concluding that trial court erred in finding a viable claim of tortious interference where "testimony established that appellant had threatened the Stanfords with bodily harm, had

---

[6] In their response to the motion to dismiss, Plaintiffs allege for the first time that Ocwen is liable for trespass because it caused CoreLogic to inspect the home on March 25, 2013, even though Plaintiffs had given prior notice that such entry was forbidden. (*See* Doc. 21 at 10). But this allegation fails to state a claim. In the first place, Plaintiffs allege no well pleaded facts to show that Ocwen received notice that such entries were forbidden. Moreover, the Security Deed Mr. Bennett signed grants the lender authority to inspect the property if the loan is in default, (*see* Doc. 1-1 at 3), and Plaintiffs' allegations plainly show that they were in default at the time the inspection occurred: Plaintiffs had failed to make any payments on the loan in February and only became current on the loan on March 26, 2013, a day after CoreLogic inspected the property. (Doc. 16 at ¶¶ 6-8). Since Plaintiffs' loan was in default, and the Security Deed explicitly grants the lender permission to enter the property upon default, it cannot be said that Ocwen trespassed onto the property. *See Tacon v. Equity One, Inc.*, 280 Ga. App. 183, 188, 633 S.E.2d 599 (Ga. Ct. App. 2006) ("The common law right to the exclusive use and possession of property may be modified by agreement, in which the landowner grants permission to enter his property under certain circumstances.") (citation omitted).

gotten a temporary restraining order against the Stanfords' improvement of the property, and had caused the Stanfords to be unable to convey good title to any potential purchaser of the property" but there was no evidence that the appellant interfered "with the Stanfords' possessory interest in the realty"); *Tower*, 198 Ga. App. at 564 (holding that because an error in a security deed had no legal effect on plaintiff's actual title to the property, the plaintiff's cause of action under O.C.G.A. § 51–91–1 failed because there was no evidence that the error interfered with the plaintiff's possessory interest).

Accordingly, because Plaintiffs failed to show an interference with their possessory interest, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiff's tortious interference with property rights claim (Count X).

### 9.    <u>Georgia RICO</u>

Under O.C.G.A. § 16–14–4, "[i]t is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  O.C.G.A. § 16–14–4(a).  " 'Pattern of racketeering activity' means: (A) Engaging in at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions that have the same or similar intents, results, accomplices, victims, or

methods of commission." O.C.G.A. § 16–14–3(8). Ocwen argues that all Plaintiffs' allegations relate to a single transaction and consequently do not constitute a "pattern of racketeering activity." (Doc. 19-1 at 17-18).

In *Cobb v. Kennon Realty Services.*, 191 Ga. App. 740, 382 S.E.2d 697 (Ga. Ct. App. 1989), the plaintiff obtained a loan guaranteed by one of the defendants and secured by the plaintiff's home. Months later, the plaintiff renewed the note for the loan. *Id.* at 741. After the lender demanded payment, the guarantor paid off the note, and plaintiff executed yet another security deed in favor of the original guarantor. *Id.* at 741. Eventually, the plaintiff defaulted on the loan and brought suit under the Georgia RICO act, alleging that the defendants had fraudulently induced him into the loan. *Id.* The Georgia Court of Appeals held that no pattern of racketeering activity could be shown because, even though the plaintiff had entered into multiple contracts over an extended period of time, "the evidence submitted concerned only the one extended transaction between [the plaintiff]" and the defendants i.e., the mortgage loan. *Id.*

Similarly, in *McGinnis v. American Home Mortgage Servicing, Incorporated.*, No. 5:11–CV–284 (CAR), 2012 WL 426022 (M.D. Ga. Feb. 9, 2012), the plaintiff obtained a mortgage loan and executed a promissory note in favor of TB & W. After the defendant acquired servicing rights to the loan, it increased the plaintiff's monthly payment without providing her notice. *Id.* at *2.

When the plaintiff made her next monthly payment, the defendant notified her that she was delinquent, even though the plaintiff was in fact current on her obligations. *Id.* at *3. Over the next several months, the plaintiff disputed her delinquency, while the defendant assessed or collected late fees, foreclosure fees, and other fees that were not disclosed on the plaintiff's monthly statements. *Id.* at *4. Ultimately, the plaintiff defaulted on the loan and brought suit under the Georgia RICO act, claiming that the defendant raised her monthly payments without her notice and converted her payments and property. *Id.* at *18. Although the record showed that the defendant converted several of the plaintiff's payments over a two year period, the court found no pattern of racketeering activity because the defendant's "act of unreasonably increasing [the plaintiff's] monthly payment without due notice and converting her payments and, eventually, the Property, [was] simply one extended transaction." *Id.* at *19.

The same result should be reached here. Plaintiffs allege that Ocwen unlawfully appropriated, converted, and deprived them of their property (money) by charging unauthorized late fees and by representing "that a higher balance was owed on their mortgage loan accounts than than [sic] they owed." (Doc. 16 at ¶¶ 90-93). As in *Cobb* and *McGinnis*, those allegations all relate to one single underlying transaction – the mortgage loan. Moreover, as *Cobb* and *McGinnis* explain, the fact that the transaction here consists of multiple loan and fee

payments over an extended period of time does not convert those payments into separate and distinct transactions for RICO purposes. *See McGinnis*, 2012 WL 426022, at *19 (dismissing Georgia RICO claim on the grounds that it consisted of only one extended transaction where the plaintiff made several payments to loan servicer over two year period); *Cobb*, 191 Ga. App. at 741 (finding single transaction where plaintiff entered into several loan contracts). Thus, because the loan and fee payments are part of a single extended transaction, Plaintiffs have failed to plead a pattern of racketeering activity. *See Robert L. Franklin Tr. of Global Liquidating Trust v. Consus Ethanol, LLC*, Civil Action File No. 1:11–CV–4062–TWT, 2012 WL 3779093, at *4 (N.D. Ga. Aug. 29, 2012) (holding that no pattern of racketeering activity could be shown because, even though the parties entered into multiple loan contracts, the plaintiff's allegations all related to a single financial transaction i.e., the loan).

Accordingly, because Plaintiffs failed to allege a pattern of racketeering activity, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiff's Georgia RICO claim (Count XI).

### 10. <u>Fraud and Deceit Claim</u>

Under Georgia law, a plaintiff alleging a claim for fraud must establish five elements: "(1) a false representation by a defendant, (2) scienter, (3) intention to induce the plaintiff to act or refrain from acting, (4) justifiable reliance by plaintiff,

and (5) damage to plaintiff." *Summit Auto. Grp., LLC v. Clark*, 298 Ga. App. 875, 880, 681 S.E.2d 681 (Ga. Ct. App. 2009) (citation and punctuation omitted). In addition, Rule 9(b) requires a plaintiff "alleging fraud or mistake ... [to] state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). That requirement is satisfied when a plaintiff alleges "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).

Here, Plaintiffs' fraud and deceit claim fails to satisfy Rule 9(b). The only allegation they offer is that Ocwen "did not fix the error once they admitted they knew of it …." (Doc. 16 at ¶ 98(b)). But that allegation fails to describe the precise statement or misrepresentation made, or the time, place, or person responsible for the statement. *Phillips*, 2013 WL 4854760, at *4 (dismissing fraud claim where the plaintiff relied only on conclusory allegations and did not "allege any false statement made by OLS" or "when th[e] statement was made or who made it"). Plaintiffs' fraud and deceit claim therefore fails.

Accordingly, because Plaintiffs failed to satisfy Rule 9(b), the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiff's fraud and deceit claim (Count XII).

### 11.     Attorney's Fees and Expenses

*Pro se* Plaintiffs seek to recover attorney's fees and expenses under O.C.G.A. § 13-6-11.  (Doc. 16 at ¶ 99).  "[P]ro se litigants who are not attorneys cannot recover attorney fees because of the lack of any meaningful standard for calculating the amount of the award."  *JarAllah v. Am. Culinary Fed'n, Inc.*, 242 Ga. App. 595, 596, 529 S.E.2d 919 (Ga. Ct. App. 2000) (citing *Cazalas v. U.S. Dept. of Justice*, 709 F.2d 1051, 1058(4) (5th Cir. 1983)); *see also Demido v. Wilson*, 261 Ga. App. 165, 169, 582 S.E.2d 151 (Ga. Ct. App. 2003) (holding that *pro se* plaintiff could not recover attorney's fees and expenses under O.C.G.A. § 13-6-11).  Since *pro se* Plaintiffs may not recover attorney's fees and expenses, Ocwen is entitled to dismissal of this claim.

Accordingly, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **GRANTED** as to Plaintiffs' claim for attorney's fees and expenses (Count XIII).

### 12.     Punitive Damages

Plaintiffs' final claim is for punitive damages.  (Doc. 16 at ¶ 102).  Ocwen seeks to dismiss Plaintiffs' punitive damages claim on the grounds that Plaintiffs

have no viable underlying cause of action except for a claim under RESPA, which does not permit a recovery of punitive damages. (Doc. 19-1 at 20). Having reviewed Plaintiffs' Second Amended Complaint, however, the undersigned finds that it states a plausible claim for conversion. "Georgia law is clear that actions for … conversion may support an award of … punitive damages." *Armstrong v. Ocwen Mortg. Co.*, No. CV413–010, 2014 WL 1319389, at *7 (M.D. Ga. Mar. 28, 2014) (citations omitted); *see also Floyd v. First Union Nat. Bank of Georgia*, 203 Ga. App. 788, 792, 417 S.E.2d 725 (Ga. Ct. App. 1992) ("[P]unitive damages are appropriate for conversion as a tort.") (quotation omitted). Thus, Ocwen is not entitled to dismissal of the punitive damages claim.

Accordingly, the undersigned **RECOMMENDS** that Ocwen's motion to dismiss be **DENIED** as to Plaintiffs' claim for punitive damages (Count XVI).

## II.    Motion To "Add  Joinder Of Claims"

Shortly after Ocwen moved for partial dismissal of Plaintiffs' Second Amended Complaint, Plaintiffs submitted their Motion to Add Joinder of Claims (Doc. 22), construed by the undersigned as a motion to amend their Second Amended Complaint. With their motion, Plaintiffs request to add the following claims to their Second Amended Complaint: (1) loss of consortium; (2) civil conspiracy; and (3) rescission. (Doc. 22 at 1-4). Ocwen insists that the motion to amend should be denied because amendment would be futile. (Doc. 27 at 8-13).

Rule 15 instructs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial." *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989). A substantial reason for denial exists when there is "undue delay, undue prejudice to the defendants, [or] futility of the amendment." *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1218 (11th Cir. 2004).

In regards to futility, the denial of leave to amend is justified "when the [amended] complaint is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (internal citations omitted). Because efficiency concerns dictate that courts and opposing parties should not be required to expend resources on hopeless cases, "leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008).

## A.    Loss Of Consortium

Under Georgia law, a husband or wife may bring "an independent cause of action for the loss of consortium" of their spouse "due to a tortious injury inflicted upon [them]." *Pattee v. Georgia Ports Auth.*, 477 F. Supp. 2d 1272, 1276 (S.D. Ga. 2007) (citing *Walden v. Coleman*, 105 Ga. App. 242, 243, 124 S.E.2d 313 (Ga.

Ct. App. 1962)). "Loss of consortium is therefore deemed a 'derivative' claim, arising out of a tort committed against the plaintiff's spouse." *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1334 (N.D. Ga. 2009) (citing *Canberg v. City of Toccoa*, 255 Ga. App. 890, 892, 567 S.E.2d 21 (Ga. Ct. App. 2002) ("One spouse's claim for the loss of the other spouse's consortium derives from the right of the other spouse to recover for her injuries")). "Although derivative of a plaintiff's spouse's primary claim, a loss of consortium claim is a separate and distinct claim for relief." *Id.* (citing *White v. Hubbard*, 203 Ga. App. 255, 416 S.E.2d 568, (Ga. Ct. App. 1992).

A loss of consortium claim is based on the loss of " 'a property right growing out of the marriage relationship, and includes the exclusive right to the services of the spouse and to the society, companionship, and conjugal affection of each other.' " *Sevcech v. Ingles Markets, Inc.*, 222 Ga. App. 221, 225, 474 S.E.2d 4 (Ga. Ct. App. 1996) (quoting *Arnac v. Wright*, 163 Ga. App. 33, 34, 292 S.E.2d 440 (Ga. Ct. App. 1982)); *see also Timms v. Verson Allsteel Press Co.*, 520 F. Supp. 1147, 1149 (N.D. Ga. 1981) ("Damages for loss of consortium are designed to compensate the spouse for the loss of services, sexual intercourse, society and affectionate relations.") (citation omitted). To state a plausible claim for loss of consortium, "plaintiff must introduce evidence sufficient to pass muster on two

fronts, these being (1) liability and (2) damages." *Smith v. Tri-State Culvert Mfg. Co.*, 126 Ga. App. 508, 510, 191 S.E.2d 92 (Ga. Ct. App. 1972).

Here, Plaintiffs fail to allege well-pleaded facts to state a plausible loss of consortium claim. In the first place, they fail to identify which spouse is seeking to recover for loss of consortium. (Doc. 22 at 1). More importantly, nowhere in their rambling allegations, (*see id.* ("[l]oss of consortium, dealing with the stress of this whole ordeal has placed great strain on our entire household. I spoke with [defense counsel] about not wanting to deal with the legal issues during the holidays, because it was already stressful, yet here we are"; "[t]he holiday season is stressful in and of itself, which is why I filed the Motion for Summary Judgment when, [sic] the Defense was due to turn in their Answer"; "I filed this complaint in September to avoid this"; "I was willing to work with [defense counsel] and do the extension, because he has had me under the impression that we would be using that extra time to talk settlement"; "I have given them offers a few times and they still have not given a counter-offer, to start negotiations")), do they allege any damages to a property right growing out of their marriage relationship. *Sevcech*, 222 Ga. App. at 225 (finding loss of consortium claim deficient where the plaintiff never alleged that the incident changed the plaintiff's "home life or relationship with her husband, including her physical relationship" or deprived her "of her husband's services"). Accordingly, Plaintiffs' loss of consortium claim is futile.

## B. **Civil Conspiracy**

In Georgia, a conspiracy is "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *U.S. Anchor Mfg. v. Rule Indus.*, 264 Ga. 295, 443 S.E.2d 833, 855 (Ga. 1994) (citations omitted). " 'To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.' " *Mortensen v. Bank of Am., N.A.*, No. 3:10–CV–13 (CDL), 2011 WL 5593810, at *6 (M.D. Ga. Nov. 17, 2011) (quoting *Jenkins v. Wachovia Bank, Nat'l Ass'n*, 309 Ga. App. 562, 567, 711 S.E.2d 80 (Ga. Ct. App. 2011)).

Here, Plaintiffs mention their allegations for tortious interference with property rights and Georgia RICO under their civil conspiracy claim, but because those claims fail for the reasons already discussed, any proposed conspiracy claim based on those causes of action must also fail. *See Davis v. Bank of Am., N.A.*, Civil Action No. 1:11–cv–04552–JEC–RGV, 2012 WL 3949618, at *7 (N.D. Ga. May 17, 2012) (concluding that civil conspiracy claim was futile because the plaintiff failed to state a claim for the underlying tort on which the conspiracy claim was based), *adopted by* 2012 WL 3949224 (N.D. Ga. Sept. 10, 2012); *Mortensen*, 2011 WL 5593810, at *6 (dismissing conspiracy to commit fraud claim because the underlying tort (fraud) failed to state a claim). And while Plaintiffs do

discuss an alleged conspiracy to convert their property (a claim that the Court has found valid), their allegations fail to show that another person/party acted in concert with Ocwen to commit that tort, a necessary element of a civil conspiracy claim. *See id.* Thus, the civil conspiracy claim fails.

**C.    Rescission**

Plaintiffs finally allege that they are entitled to equitable rescission of the loan contract due to fraud and misrepresentation. (Doc. 22 at 5). For the reasons previously discussed, Plaintiffs have not sufficiently alleged fraud or misrepresentation under Rule 9(b) – they have not alleged "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n*, 605 F.3d at 1291. As such, they are not entitled to rescission on account of fraud.

Accordingly, because all of the claims Plaintiffs seek to add fail to state a claim upon which relief may be granted, amendment would be futile. The undersigned therefore **RECOMMENDS** that Plaintiffs' Motion to Add Joinder of Claims (Doc. 22) be **DISMISSED**.

**III.    Motion To Amend Complaint**

Plaintiffs request to file an Amended Complaint so that they can withdraw their rescission and violation of O.C.G.A. § 7-1-1013 claims and add claims for quiet title and loss of consortium. (Doc. 56 at 2). Ocwen again argues that leave should be denied because the new claims Plaintiffs seek to add are futile. (Doc. 58 at 6).

## A.    Quiet Title

Plaintiffs allege that "[d]ue to Ocwen's, countless acts of bad faith, during the course of servicing our mortgage, as well as they haven't complied with RESPA statutes and the Plaintiffs are unsure of who owns their deed, the Plaintiffs wishes [sic] to have the title quieted, on the grounds of the fraud and misrepresentation." (Doc. 56-1 at ¶ 88). To state a quiet title claim, a plaintiff must set forth:

> a particular description of the land to be involved in the proceeding, a specification of the petitioner's interest in the land, a statement as to whether the interest is based upon a written instrument ... or adverse possession or both, a description of all adverse claims of which petitioner has actual or constructive notice, the names and addresses, so far as known to the petitioner, of any possible adverse claimant, and, if the proceeding is brought to remove a particular cloud or clouds, a statement as to the grounds upon which it is sought to remove the cloud or clouds.

O.C.G.A. § 23–3–62(b). In addition, a petition seeking to quiet title must include: "a plat of survey of the land" and "a copy of the immediate instrument or instruments of record or otherwise known to the petitioner, if any, upon which any

person might base an interest in the land adverse to the petitioner." *Id.* at § 23–3–62(c).

Plaintiffs' quiet title claim here fails to satisfy the Georgia statutory requirements for at least three reasons. First, Plaintiffs do not provide a description of any adverse claims to the property, nor do they list the names and addresses of any adverse claimants. (*See generally* Doc. 56-1). In addition, the proposed amended complaint fails to explain what cloud is presently over the title that Plaintiffs claim needs to be quieted. Although Plaintiffs express uncertainty as to the owner of their Security Deed, documentation attached to the original Complaint clearly shows that MERS, as nominee for Mortgage Services and its successors and assigns, possesses the Security Deed and thus holds legal title to the property. (Doc. 1-1 at 1). Finally, Plaintiffs here failed to attach to the proposed amended complaint a plat of survey of the land, as required by the statute. (*See* Doc. 56-1); *see also Constantin v. Wells Fargo Bank, N.A.*, Civil Action No. 2:13–CV–00155–RWS, 2014 WL 793609, at *4 (N.D. Ga. Feb. 27, 2014) (dismissing quiet title claim with prejudice as a result of the plaintiff's failure to provide a plat of survey of the land); *Peterson v. Merscorp Holdings, Inc.*, Civil Action No. 1:12–cv–00014–JEC, 2012 WL 3961211, at *4 (N.D. Ga. Sept. 10, 2012) (dismissing quiet title claim with prejudice where the plaintiff failed to attach plat of survey of the land and also failed to explain what cloud was over the title);

*Joseph v. CitiMortgage*, No. 1:11–CV–2768–TWT, 2011 WL 5156817, at *2 (N.D. Ga. Oct. 27, 2011) (dismissing quiet title action with prejudice because the plaintiff failed to file plat of survey of the land); *Mann v. Blalock*, 286 Ga. 541, 543, 690 S.E.2d 375 (Ga. 2010) (holding quiet title action legally defective for the plaintiff's failure to file plat of survey). As a result, the proposed quiet title claim is futile.

**B.** <u>**Loss Of Consortium**</u>

Plaintiffs allege that "[d]ue to Ocwen's malicious behavior and failure to acknowledge their wrong doing, or correcting it, our whole family has and continues to suffer. As such, the Plaintiff's spouse and children are entitled to loss of consortium." (Doc. 56-1 at 24). But this claim fails for the same reasons discussed above in connection with Plaintiffs' other proposed loss of consortium claim – Plaintiffs never identify which spouse is seeking loss of consortium, nor do they plead any damages to a property right growing out of their marriage relationship, a necessary element for a loss of consortium claim. *See Sevcech*, 222 Ga. App. at 225. And, to the extent that Plaintiffs seek damages for loss of consortium on behalf of their children, Georgia law is clear that a loss of consortium claim "is by its very nature historically and definitionally self-limited to and applicable only to the two parties to the marital union, the spouses, and is,

thus, unavailable to the minor child of the tortiously injured parent." *W.J. Bremer Co., Inc. v. Graham*, 169 Ga. App. 115, 116, 312 S.E.2d 806 (Ga. Ct. App. 1983).

Accordingly, because all of the claims Plaintiffs seek to add fail to state a claim upon which relief may be granted, amendment would be futile. The undersigned therefore **RECOMMENDS** that Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 56) be **DENIED**.

## III.     Motion For Sanctions

Plaintiffs seek, pursuant to Rule 37(b)(2)(A), a sanction of default judgment against defense counsel for "contempt of Court for failure to comply with a Court ordered subpoena," and "fraud upon the court as well as the Plaintiffs …." (Doc. 55 at 1). Rule 37(b)(2)(A) provides, in relevant part: "If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders." Consequently, to recover sanctions under Rule 37(b), "Plaintiff[s] must (1) identify a discovery order or directive and (2) show that the order or directive has been violated." *Jones v. Tauber & Balser, P.C.*, 503 B.R. 162, 200 (N.D. Ga. 2013) (citing *U.S. v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997)); *see also Melendez–Garcia v. Sanchez*, 629 F.3d 25, 33 (1st Cir. 2010) ("The plain language of Rule 37(b) provides that before a court can impose sanctions, the offending party must 'fail[ ] to obey an order to provide or permit discovery.' "); 7 Moore's Federal Practice, §

37.42[1] (Matthew Bender 3d Ed.) ("The absence of a prior order or direction compelling discovery precludes Rule 37(b) sanctions."). To impose the harsh sanction of default judgment, "the district court must make a finding of willful or bad faith failure to comply." *Rasmussen v. Cent. Florida Council Boy Scouts of Am., Inc.*, 412 Fed. Appx. 230, 232 (11th Cir. 2011) (unpublished per curiam opinion) (citing *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993)).

Here, Plaintiffs fail to identify a discovery order or directive that Ocwen violated. For that reason alone, the motion for sanctions should be denied. Yet even if the undersigned construed Ocwen's failure to respond to Plaintiffs' subpoena as a violation of a discovery order, a default judgment would still be inappropriate, as Plaintiffs fail to present any evidence of willful or bad faith failure to comply, and the undersigned can glean none from the record. The undersigned therefore **RECOMMENDS** that Plaintiffs' Motion for Sanctions (Doc. 55) be **DENIED**.[7]

---

[7] Most of Plaintiffs' motion for sanctions is devoted to explaining how Mr. Bennett's Security Deed was signed by "robo-signers." (*See generally* Doc. 55). Putting aside the fact that these allegations are completely irrelevant to the sanctions motion, courts have regularly rejected such allegations. *See, e.g.*, *Hines v. MidFirst Bank*, Civil Action No. 1:12–CV–2527–TWT–JSA, 2013 WL 609401, at *1 (N.D. Ga. Jan. 8, 2013) (noting that the plaintiff's claims, including a claim based on "robo-signing" of assignment, "have been rejected numerous times before and should be rejected again in this case"), *adopted by* 2013 WL 603883 (N.D. Ga. Feb. 15, 2013); *Wilson v. JP Morgan Chase Bank, N.A.*, Civil Action No. 2:11–

## CONCLUSION

It is **RECOMMENDED** that Ocwen's Partial Motion to Dismiss (Doc. 19) be **GRANTED in part and DENIED in part**.  In particular, the undersigned **RECOMMENDS** that all of the claims asserted in the Second Amended Complaint (Doc. 16) be **DISMISSED** except for Plaintiffs' claims for RESPA violations (Count VIII), conversion (Count IX), and punitive damages (Count XVI).  It is further **RECOMMENDED** that Plaintiffs' Motion to Add Joinder of Claims (Doc. 22), Motion for Sanctions (Doc. 55), and Motion for Leave to File Amended Complaint (Doc. 56) be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 13th day of May, 2014.

 /s/  J. CLAY FULLER
J. CLAY FULLER
United States Magistrate Judge

---

CV–00135–RWS, 2012 WL 603595, at *4 (N.D. Ga.  Feb. 24, 2012) ("Aside from the fact that Plaintiff has alleged no facts whatsoever to show that the Assignment was 'robo-signed,' this claim must fail because there is no such cause of action in Georgia." (quotation omitted)).