FILED IN CLERK'S OFFICE
U.S.D.C. -Gainesville

JUN − 9 2014

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

## U.S DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| **COBREY BENNETT & MARYAM** ) | **Civil Action No.: 2:13-cv-00243-JCF** |
| ) | |
| **BENNETT** ) | **Judge J. Clay Fuller** |
| ) | |
| **Plaintiffs,** ) | PLAINTIFFS REQUEST A TRIAL BY JURY |
| ) | |
| **v.** ) | |
| ) | **JOINDER OF CO-DEFENDANTS** |
| **OCWEN LOAN SERVICING, LLC,** ) | |
| ) | RESPA Violations', Negligence', |
| **CITIMORTGAGE, SELENE** ) | Intentional Infliction of Emotional |
| ) | Distress', Conversion, Punitive |
| **FINANCIAL, & ASSURED HOME** ) | Damages, Tortious Interference with |
| ) | Property Rights', Fraud & Deceit', |
| **FINANCIAL** ) | RICO Act Violations', Violations of |
| ) | Chapter 7 Discharge Injunction, |
| **Defendants** | Coercion', & Civil Conspiracy |

## JOINDER OF CO-DEFENDANTS

**COMES NOW** the Plaintiffs, Cobrey and Maryam Bennett, Pursuant to Rule 19 (a)(1)

(A) of the Federal Rules of Civil Procedure, files a motion to add Selene Finance,

CITIMORTGAGE, & Assured Home Financial to the above styled case as

CO-DEFENDANTS. This Joinder should be added in addition to the complaint that,

Judge Fuller issued his non-final report and recommendations not as a replacement.

The Plaintiffs, are required to add the a fore mentioned parties to the complaint,

because their actions, all worked in concert, that led to years of financial and emotional

damages to the Plaintiffs.

1

## PRELIMINARY STATEMENT

**1.** This is an action for actual damages, statutory damages, legal costs, compensatory damages, & punitive damages, and rescission of the loan, RESPA violations, Chapter 7 Discharge Injunction Violations and more

## JURISDICTION

**2.** This Court has jurisdiction to hear this matter pursuant to 15 USC § 1692k (d), Ga. Code Ann. § 9-10-91, and O.C.G.A. § 14-2-510.

## PARTIES

**3.** Plaintiffs Cobrey & Maryam Bennett, are individual consumers who reside at 965 Summerfield Dr Cumming, GA 30040.

**4.** Ocwen OCWEN Loan Servicing, ("OCWEN") is a Florida corporation with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

**5.** Assured Home Financial, ("Assured") is a California corporation not registered to do business in the state of GA. They can be served through the Secretary of State for the State of GA.

**6.** Defendant, Selene Finance LP, ("Selene"), is a limited partnership established under Delaware law. Its registered agent and office are the Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

**7.** Defendant CitiMortgage, ("CITI") is a for-profit corporation and subsidiary of

2

Citigroup organized under the laws of the State of Delaware, based in the State of

Missouri, doing business within the United States, and within the Northern District of

the State of Georgia, and is subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

**8.** In December 2008, the Plaintiffs, filed for a Chapter 7 Bankruptcy due to financial

troubles. See (Case 2:08-bk-23643)

**9.** The Plaintiffs, were granted a chapter 7 discharge on August 14, 2009.

**10.** When the Plaintiffs, were granted the discharge, CITI, was our mortgage company.

**11.** The Plaintiffs did not reaffirm any of their debts, but continued to voluntarily pay

Citi.

**12.** On June 10, 2010 the Plaintiffs, sent the following email, to Citi, via John J Godinet

whose email address is: john.j.godinet@citigroup.com & via Leann Luhn email address:

leann.luhn@citigroup.com.  "I called in and got accepted in the Obama plan that

reduced my monthly payment. We made it past the 3 month trial period and which after

it we were told that we would all be caught up. After the trial period, we started getting

letters saying that we never sent in the requested paper work which we had twice. Then

we got a statement saying we didn't have enough in escrow and that our payment was

going to increase by $200. Then like a month or so later we got something from

citimortgage saying that we were in the default of the Obama plan and to call in. I called

in to see what we did to get disqualified and they told me that they could not find our

file. Now we are getting statements in the mail saying that we are $30,000 in arrears."
*See* (Ex A pg 2)

**13.** On August 7, 2010, we got the following email from Citi, "Thank you for your recent visit to our website and email inquiry. We appreciate your taking the time to contact us. Please contact our Loss Mitigation Department at 1-866-272-4749 for assistance with your inquiry. Representatives are available Monday to Friday 7:00 a.m. - 11:00 p.m. CT and Saturday to Sunday 7:00 a.m. – 7:00 p.m. *See* (Ex A pg 2)

**14.** On August 10, 2010 we received another email from Citi, "Thank you for your recent visit to our website and email inquiry. We appreciate your taking the time to contact us. Per our records, your loan has been service released to Selene Finance. We request you to contact the Customer Service of Selene Finance. *See* (Ex A pg 3)

**15.** On August 11, 2010, the Plaintiffs, contacted Selene, via email stating, "As far as not being able to afford our home. The loan specialist I spoke to was so upset, he hung up on us. He was trying to get us to do a short sale when I kept telling him we wanted to keep our home, he didn't even try and work with us. So I would like to talk to someone else so we can work out something to be able to keep our home. *See* (Ex A pg 3)

**16.** On August 11, 2010, the Plaintiffs, sent an email to Citi, disputing charges from Selene, whom claimed in one letter, we were behind on our mortgage almost $30,000. The other stating, we could not afford our home. *See* (Ex A p 3-4)

**17.** On August 19, 2010, Selene sent the following email, "Dear Mr. and Mrs. Bennett:

Selene Finance would like to take this opportunity to thank you for your email on

8/11/2010 and facsimile on 8/16/2010 regarding your mortgage loan. Our letter

addressing your concerns is being forwarded to you by return mail and should arrive

shortly. *See* (Ex A p 4)

**18.** On August 26, 2010, the Plaintiffs, sent an email to Selene, stating, "We received in

regards to CitiMortgage. We have proof to the contrary of what they are saying. I will be

gathering it and sending what I have. Also have asked several times for the financial so

we can come to an agreement on the mortgage because we want to keep our home. I

have asked that they be mailed, faxed, or emailed and I still have not received anything.

I don't know why nothing has been done, but I would like resolve this as soon as

possible. So we will have one less thing to worry about. Thanks for your time. *See* (Ex)

**19.** On August 27, 2010, the Plaintiffs sent Selene an email stating, "In this link I am

sending it shows why Citimortgage, sold our loan when I started asking questions about

their practices. As I have said before we have the bank statements showing that we were

making payments on our loan and they are showing we haven't it is untrue and we have

proof and if Selene Finance, does not try and help up get to the bottom of this after you

have been warned of the situation we will have right to sue both Citi and Selene. We are

not the first people Citi, have done this too but I am not giving up without a fight. Also

with the papers we received as an explanation from Citi, you can tell their claims have

no basis. How can we stay on a program from 7/09 to 4/10 and then they canceled it due

5

to our income? when Selene, is trying to claim that we don't make enough to keep our

home. Also the excuse they gave to why our debt was not forgiven as promised is what?

They never really said. Wonder why? I do too. *See* (Ex A p 5)

**20.** On September 2, 2010, Selene sent the Plaintiffs an email stating, "Thank you for informing us that you have not received the Financial Letter mailed to you on 8/5/2010 and 8/18/2010. For your convenience, I am attaching copies of the letter outlining the documentation needed by your Loan Resolution Consultant. You may return the documentation to our Loan Resolution Department by facsimile at 866-926-5498.

If we may be of further assistance, please contact our Customer Service Department toll free at 877-735-3637. Our staff is available from 8:00 AM to 6:00 PM CST, Monday through Friday." *See* (Ex A p 5)

**21.** On September 10, 2010, the Plaintiffs, sent an email to Selene stating, "I received an

email regarding the financials of our house to be filled out and faxed in. However on the

paperwork it has the date August 5, 2010 and it is to be turned in no late than five days

of that date. I want to know if I can receive another made out for today's date or

whatever the date is from when the paperwork will be sent out so I will not add to any

more confusion in this situation. Thank you so much for your understanding." *See* (Ex A

p 6)

**22.** In reply, Selene, sent an email to the Plaintiffs, on Friday September 10, 2010 1:28

PM stating, "Dear Mr. and Mrs. Bennett: Selene Finance would like to take this

opportunity to thank you for your email concerning your account. We have reviewed

your email however, the 'link' you referenced was not inclusive of your memorandum.

Although you were denied by CitiMortgage for loan modification, we look forward to

6

receiving your financials to assist you with your mortgage account. We must tell you that there is no guarantee your loan will be modified, but we are attempting to assist you in your circumstances. *See* (Ex A p 7)

**23.** The Plaintiffs replied on 9/10/10 to Selene, stating, "If you were to refer to all of the other emails that I have sent you will see that I have not received any of the paperwork until September 3rd and the one I received was out dated, and I have more than just the link to prove that Citimortgage is not being honest in saying we haven't paid our mortgage since April of 09. I have bank statements and the cashed checks to prove them false. I will send in all of this info when I get the update financial package. The transactional history will be proven false when I send in the prior info I have stated. When it is I will expect the amount due to be adjusted or a refund for the amount that we paid that they are saying we didn't. Thank you for your time. We also stated, "We forgot to add that all the dates that shows as Selene sending me the financial package just so happen to be the days I call/and or email to notify Selene that I had yet to receive said package. I have the times I have tried to contact Selene to get the package documented just for cases like this. I have been trying to solve the issues that are said to be ours. I am showing my willingness to work with this company so if nothing is resolved it stands to say that is not because of our doing.*See* (Ex A p 7)

**24.** On September 10, 2010, Selene sent the following email,

"Attached is your financial package and IRS Form 4506T.  Please complete both forms and return back to us within 5 days with all documentation.  You may fax this

7

information to 1-866-926-5498. *See* (Ex A p 7)

**25.** On September 14, 2010, the Plaintiffs, sent an email to Selene, stating that we

had mailed all the requested information they sent on 09/10/10,  I have included the info

for the financial packet as well as the info that shows we have made almost $9000.00 in

payments in the period from September 2009 through June of 2010. Which negates their

claims of us not having made any mortgage payments since April of 2009. Their claim

for the $30,000 is false and I am sending the proof, to show so you do not close out the

investigation I requested without further looking into the evidence of the info I am

sending in. *See* (Ex A p 8)

**26.** On 09/23/10, Selene, sent this email, "On 9/16/10, we received an email from you

stating that the amount due on your loan is incorrect along with receipts for payments

made on your loan to CitiMortgage.  The transactional history sent to you with our letter

of 8/19/2010 shows all these payments received with the exception of your payment of

$1802.57 which was returned to you by CitiMortgage on 6/24/2010.  I am attaching an

additional copy of your 2009 and 2010 history from CitiMortgage with these payments

underscored. **<u>Your mortgage is severely delinquent and due for the 4/1/2009</u>**

**<u>payment</u>**, however our Loan Resolution Consultants are willing to review all options to

assist you in bringing your mortgage to a current status. *See* (Ex A p 8)

**27.** How could we have made all the payments, they claimed we made in their own

words, and not apply any of them to the one payment they claimed was delinquent?

**28.** On 10/12/10, the Plaintiffs, sent Selene an email claiming, "I have tried several times to try and work out the missed payments with Selene Finance. I have not heard anything back. We are trying to add the missed payments on to the back of the mortgage and be caught up so we won't have the problems we are willing to do what we can to work with you but we need you all to work with us as well. We want to keep our home and we got a call from a Realtor about a short sell when we thought that someone was working with us to come up with a plan to get back on track. We started off with this company by trying to start off on the right foot and making our payments on time only to have the check returned to us. I don't know what you want to do but I would love to hear something back. Thank you for your time." *See* (Ex A p 9)

**29.** In reply to our email, Selene sent this on 10/15/10, "Selene Finance would like to take this opportunity to thank you for your emails received 10/4/2010 and 10/12/2010 concerning your account. Since receipt of your Financial Worksheet and IRS Form 4506-T, our Loan Resolution Consultants have been actively attempting to reach you to discuss the best workable solution for your mortgage status. A requirement of our loan workout strategy is a face-to-face interview with our borrowers on the property condition in the event you are unreachable, hence, the recent contact you received from Keller Realty."*See* (Ex A p 10)

**30.** On 10/27/10, we sent Selene an email still disputing the amount they claimed we owed. *See* (Ex A p 10)

9

**31.** On 11/12/10, Selene, sent us an email claiming, they received our down-payment of $3600.00 on 11/5/2010 and the Forbearance Agreement was forwarded to you 11/9/2010 for execution and return.  With reference to your concern regarding the total amount due per CitiMortgage, please refer to our letter of 8/19/2010 and our Debt Validation Letter mailed to you 7/26/2010.  At the time you started your Trial Period Plan with CitiMortgage 07/2009 – 09/2009, your mortgage was due for 11/1/2008.  Even though you remitted 4 payments of $1393.67 during 2009, those funds were deposited into a suspense account until there were sufficient funds to complete a full contractual payment of $1773.20 due on 11/1/08, 12/1/08 and 1/1/09.

Those funds received by CitiMortgage on 3/17/2010 ($2700.00) and 3/23/10 ($1542.72) were applied as contractual payments for 02/2009 and 03/2009 in the amounts of $1773.20; the remaining suspense balance of $951.48 was included with your loan at the time of transfer on 7/15/2010.  Your mortgage remained due for 04/1/2009 at the time of transfer. *See* (Ex A p 11)

**32.** On 12/10/10 Selene sent the Plaintiffs an email stating,  they sent the financial package and IRS Form 4506T. *See* (Ex)

**33.** On 12/13/10 Selene sent the Plaintiffs, an email stating, "As requested, we are attaching a copy of our letter of 12/9/2010 mailed to you from our Loan Resolution Department listing the documents that are still required to complete our  review of your financial status." *See* (Ex A p 11)

**34.** On 12/15/10 The Plaintiffs sent Selene an email stating, "With regards to the missing paperwork that Selene needs. I signed the release to get the needed w-2 forms. We misplaced our 2008 w-2. Can the release we signed be used to get the needed w-2? As far as the Hardship letter I included that when I submitted the paperwork before. What format do you require if what I submitted for the hardship letter does not fit the requirements? The check stubs were submitted as well. I have a fax detail to show the date and time and forms I submitted to Selene. I don't know if what I sent in was correct as far as the hardship letter goes but everything should be in order." *See* (Ex A p 12)

**35.** On 12/28/10, Selene sent the Plaintiffs an email stating, On 12/28/10, our Loan Resolution Department discussed with you the financial documents that are missing. Please fax this information to 866-926-5498. *See* (Ex A p 12-13)

**36.** On 1/22/11, the Plaintiffs, sent an email to Selene stating, "These are the requested documents with the exception of the 2008 w-2. We don't have it but we have 2009 and 2010 if needed. Thank you for your time." *See* (Ex A p 13 )

**37.** On 2/15/11 the Plaintiffs, sent an email to Selene stating, "Comments: I still haven't received our loan modification papers. I am writing to find out when can we expect them and what if anything do we have to turn in once we receive the papers. Thank you" *See* (Ex A p 13)

**38.** On 3/3/11 Selene sent the Plaintiffs an email stating, "On 02/25/11, you spoke with our Loan Resolution Consultant, Barry Druckman, who confirmed your forbearance

plan was extended through 02/2011. Your one-time payment draft of $1773.20 was received and applied to the contractual payment due 09/2009 on 2/28/11." *See* (Ex)

**39.** On 4/6/11 the Plaintiffs sent Selene an email stating, We have had our home appraised twice over the last 4 months. We have also still waiting to get our loan modification done. We have not heard anything from Selene regarding either. We have done what was asked of us and want to know how much longer it will be before we hear anything back. Thank you *See* (Ex A p 14)

**40.** On 4/13/11, Selene, sent the Plaintiffs, an email stating, "Selene Finance would like to take this opportunity to thank you for your email concerning your account. To obtain information about your loan, please call and speak to any of our Loan Resolution Consultants who will be happy to assist you." *See* (Ex A p 14)

**41.** On 4/14/11 the Plaintiffs, sent Selene an email stating, "Thank you Taiese, I appreciate you sending your email address. This is a copy of the fax and email that I sent with the financial info. *See* (Ex A p 14)

**42.** In October of 2011, After trying for several months to get our loan modified through Selene, We sought an outside party to help with the modification, by the name of Assured Home Financial. *See* (Ex A p 15)

**43.** We filled out and sent in all the information Assured request in November and made a payment of $1250.

**44.** After sending in the paperwork and payment, Assured told us we didn't have pay

12

while they worked on the modification, and to sign a cease and desist to Selene, and have them only contact them, just in case they tried to collect payment from us during the negotiations. We did as advised to our own detriment.

**45.** After, a few months of not getting any word from Selene or Assured, the Plaintiffs, sent an email to assured on 2/22/12, asking for an update. *See* (Ex A p 15)

**46.** Jill Corely replied to the Plaintiffs, on 2/28/12, and stated, Ocwen told them, they would only work with us regarding the modification. *See* (Ex A p 16)

**47.** The Plaintiffs, replied to Jill, the same day stating, "So what about the money we paid to your company? And why is this the first thing I am hearing of this today? When did they tell you all that they were going to deal with us directly? *See* (Ex A p 16)

**48.** After the Plaintiffs, spoke to Jill, they called Selene, to find out why they were not willing to work with Assured, and was informed that they were in the process of foreclosing. *See* (Ex A p 16)

**49.** Selene, sent an email to the Plaintiffs stating, "We have forwarded your communication advising you are no longer represented by Assured Home Financial and your authorization rescinding the Cease and Desist request.

On 3/8/12, we forwarded the Forbearance Agreement to you both by email & the US Mail for execution.  Please return the document to our Loan Resolution Department along with the Financial Package by toll free fax at 1-866-926-5498." *See* (Ex A p 17-18)

**50.** The forbearance agreement, consisted of us making a $3,500 down-payment, March, and 3 payments of $4,275. *See* (Ex B)

**51.** Jill no longer replied or answered the plaintiffs calls. Due to this the Plaintiffs filed a complaint with the Federal Trade Commission, on 3/5/12 against Assured. *See* (Ex A 17)

**52.** On May 5, 2012 Carol Hatosy, with MSI, called us at the bequest of Selene and stated the following: "Dear Mr. Bennett, Sr, Selene Finance has asked us to contact you to confirm your eligibility for their Principal Reduction program. Current FHA guidelines may allow you to bring your mortgage balance back in line with the current value of your home, while reducing your interest rate and monthly mortgage payment. This is a unique opportunity that is only available via Selene Finance. In the event that your loan has already been modified, this is a second step that may allow you to further reduce your monthly payment and mortgage balance. There is no cost to you, and those that are eligible receive substantial benefits – with all closing costs paid by Selene Finance.

Time is of the essence. Please call today direct 240-397-2833, or reply by email to schedule a time to talk. I will be in the office on 5/7/2012 from noon until 8:00 p.m. *See* (Ex A 18)

**53.** The Plaintiffs replied with the following message, "Hi Carol, Due to things like this in the past that almost cost us our home, We would like something official from both your company as well as Selene that we can have a lawyer look over to make sure that

14

we don't get taken advantage of again. You can send it via mail to our address 965 Summerfield Dr Cumming. GA 30040. Once we get this then we will be happy to work with you. *See* (Ex A p 18)

**54.** The Plaintiffs sent Selene, the following email, "This lady Carol Hatosy | Loan Counselor contacted us saying that you called Mortgage Services III, LLC (MSI) NMLS # 172606 / # 635842 to lower our principal of our home. I want to know if you all in fact did contact them and will us working with them cause us any trouble with the agreement we have right now. Please reply so we will know how to handle this situation. Thank You!!" *See* (Ex A p 19)

**55.** On May 8, 2012, Carol contacted us via email stating, "Thank you for your request. This has no effect on the forbearance that you have arranged with Selene. This is an opportunity to refinance if you meet the eligibility requirements into a 30 year fixed rate at a lower loan amount with reduced interest rates. *See* (Ex A p 20)

**56.** On May 12, 2012, the Plaintiffs sent an email to Carol stating, "We got a letter from Selene telling us of working with your company and we got something from your company telling us we could reduce our mortgage but no forms with either. *See* (Ex A p 21)

**57.** On July 17, 2012, the Plaintiffs sent MSI an email stating, "Loria I wrote to Carol earlier and I don't know if she got my email but I need help. I tried talking to Selene we had some unexpected expenses come up and because of it I wanted to know if I could

make half of the payment on the 15th and the other half on the 31st. I had to pay dental

expenses for my kids if you like I can send you copies as well cost for an unexpected car

repair and because of it if we make the full payment we won't have any extra money

until the 31st. We have 4 kids and I have done all I could to get this process done as

expediently as possible and I thought this would have been done in June but it is still

going on. Can I please get you to speak with them on our behalf. I don't want all our

cooperation up to this point to be lost because I had to take care of my family and it left

us in a bind. Can you also let me know what we can do to expedite the refi and help me

let Selene know we are trying. Please and Thank you for whatever you can do!!"

**58.** On July 31, 2012, the Plaintiffs made their last payment of $4,275.

**59.** On September 10, 2012, the Plaintiffs sent MSI the following email, "Cathy and

Loria I got a letter today from Selene telling me that we have been uncooperative and

due to that we can't do a forbearance and should consider a short sale or some thing. I

have done nothing but what they have asked and I have kept in constant contact with

you all during this entire process. The only time a payment was late is when I informed

you all of unexpected expenditures. The payment was made before the 1st of August as

promised. Our forbearance agreement, was from March until July. After our July

payment we had been caught up on our payments and we had them come out and do to

appraisals which we had to make time for out of our schedules. I just received a letter

about a pay off amount received for the second mortgage and I sent Loria an email to

16

ask what we could expect next and I haven't heard back yet. So when I got it, I was shocked to hear Selene say that we were uncooperative I was pissed to say the least!!! Can someone please tell us what is going on?!!!" *See* (Ex A p 23)

**60.** Later that same day Loria sent the following email to the plaintiffs, "We are waiting for the response from Selene.  What day did you make the August payment?  Our reports are behind for the month of August. When will you make the September payment?"*See* (Ex A p 23)

**61.** On September 13, 2012, the Plaintiffs sent the following email to MSI, "Hey you guys I just heard back from Selene and we set up another forbearance and made the down payment so everything is squared away with them. I wanted to let you know Laura said she will send you all an email as well. Have you gotten the appraisal back yet?" *See* (Ex A p 23)

**62.** In reply, MSI sent the following email, "Please be advised that we are on hold with your request until approximately 11/1/2012 pending your on time payments for the next three months on the new forbearance plan you entered into with Selene Finance today." *See* (Ex A p 23)

**63.** On October 8, 2012, the Plaintiffs, sent the following email to MSI, "Hey Carol I made second payment today! This is the second payment can we go ahead and get this refi restarted? *See* (Ex A p 23)

**64.** On November 19, 2012, the Plaintiffs closed on their refi.

## PROCEDURAL BACKGROUND

**65.** On September 24, 2013, the Plaintiffs filed a lawsuit against Ocwen, for a multitude of reasons, in the Superior Court of GA Forsyth division.

**66.** On October 23, 2013, Ocwen moved the case to NDGA.

**67.** On December 19, 2013, Ocwen filed D.E. 19 a motion to dismiss for failure to state a claim.

**68.** On May 13, 2014 D.E. 60 Judge Fuller ruled on the Defense's motion to dismiss. Judge Fuller's non-final R & R dismissed all of the Plaintiff's claim except: Conversion, REPSA Violations, & Punitive Damages.

**69.** Due to Judge Fuller's ruling, the Plaintiffs had to add the additional parties and background, to show the depth of the Plaintiffs' plight. Without it, the picture is incomplete, and the full justice due to the Plaintiffs would not be recognized.

**70.** Because the Plaintiffs' filed their bankruptcy, pro se, they were not aware, that Citi, & Selene, were in violation of the discharge injunction, until we did months of research upon the filing of their complaint against Ocwen in September 2013.

## ARGUMENT

### Negligence

**71.** On May 13, 2014, Judge Fuller denied the Plaintiffs' claim for Negligence, because the Plaintiffs, did not point to an independent duty created by law that Ocwen violated.

**72.** Ocwen, had a duty by law, to disclose to the Plaintiffs', of the change of address for

billing. The lack of disclosing this information, led to numerous delayed payments, phone calls, threats, & unlawful trespassing, of a third party (CoreLogic).

**73.** If not for Ocwen's, lack of disclosure, the threats, phone calls, etc., could have been reduced drastically. The Plaintiffs' does acknowledge, they did have some legitimate late payments.

**74.** Pursuant to 12 U.S. Code § 2605(g)  the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due Ocwen did not do this, and this is another example of them neglecting, their legal duty to Plaintiffs.

**75.** Assured, took a payment from the Plaintiffs, with the purpose of negotiating, a loan modification on their behalf.

**76.** When Assured, found out they would not be able to complete the service, they were paid to do, they should have, informed the Plaintiffs, and refunded the Plaintiffs', money.

**77.** Assured, also had a duty to disclose to the Plaintiffs, that Selene was only willing to work with them on a loan modification. If not for their failure of Assured, to disclose Selene's refusal to work with them, the Plaintiffs, would not have, had Selene starting foreclosure proceedings.

**78.** Selene, took over the Plaintiffs', non-recourse loan from Citi, in August 2010. Upon taking over the loan, the Plaintiffs, disputed several of the charges Citi, claimed the Plaintiffs, owed during the change of the note holder.

19

**79.** Once, the Plaintiffs, sent Ocwen, Selene and Citi, a billing dispute, they had a legal duty pursuant to 12 U.S. Code § 2605, Not later than 30 days after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall, make appropriate corrections in the account, conduct an investigation, after conducting an investigation, provide the borrower with a written explanation or clarification that includes, & information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer.

**80.** Ocwen, Selene, nor Citi, followed the law according to 12 U.S. Code § 2605. For this they are negligent, and therefor the Plaintiffs have a right to relief under the negligence cause of action.

## Conversion

**81.** Judge Fuller, granted the Plaintiffs, their claim for Conversion.

**82.** The reason it is listed in the joinder, is due to the co-defendants committing conversion against the Plaintiffs.

**83.** Assured, charged the Plaintiffs, $1,250 for a service they did not/could not provide and the Plaintiffs, requested a refund, but Assured ignored their request, which led the Plaintiffs, to file a complaint with the FTC.

**84.** In number 23, The Plaintiffs, asked Selene/Citi to adjust or refund the amount that we paid that they are saying we didn't. We never received a refund from either. Therefor

the Plaintiffs, have a right to relief under for a Conversion cause of action.

## IIED

**85.** We filed our bankruptcy suit in 2008, because we were having financial difficulties. The whole point of filing for Bankruptcy is to get a fresh start. Due to Citi, Selene,& Ocwen, we were denied a fresh start.

**86.** First, Citi claimed that we were $10,000 in arrears, and they would forgive the debt, if we passed a 3 month trial period. We complied, we paid as agreed for longer than Citi asked, all the while continuing to ask, if they had adjusted our account to no avail.

**87.** Not only did Citi, not do as they claimed, they sold our loan to Selene, when we started asking to many questions & claimed we were $30,000 in arrears. Three times more than the amount they claimed we owed and what they, would forgive.

**88.** When, Selene acquired, our loan, they continued the pattern of stringing us along for months, adding fees and increasing the amount of the Plaintiffs payments, they claimed were due to escrow shortages.

**89.** Selene, strung us along for so long, claiming they didn't get all of our paperwork, or sending outdated information etc. The Plaintiffs sought help from a third party.

**90.** Selene went so far as to state the following: "The transactional history sent to you with our letter of 8/19/2010 shows all these payments received with the exception of your payment of $1802.57 which was returned to you by CitiMortgage on 6/24/2010. I am attaching an additional copy of your 2009 and 2010 history from CitiMortgage with

these payments underscored. **Your mortgage is severely delinquent and due for the 4/1/2009 payment.**"

**91.** When Selene, stated they had all of our payments with the exception of the one Citi, sent back to us in June 2010. How could they, on one hand, claim they have all of our payments, with one exception due to Citi, sending it back to us? Then on the other hand claim we were severely delinquent on one payment from 04/1/2009?

**92.** When payments are made, aren't they applied to any delinquent debt first?

**93.** We have been in a constant state of worry about losing our home, since the debt was not reaffirmed.  The fact that Citi, & Selene were violating the discharge injunction and make false claims regarding our home, to the point we sought outside help who in turn also took advantage of us and made our situation worse, only added to the stress and fear we were experiencing.

**94.** We were so desperate to keep our home, that we agreed to pay $16,325 in four months to Selene to do so, even though it cost us dearly to do so.

**95.** Due to spending 5 years, in a constant state of anxiety over our home, instead of the fresh start the bankruptcy was to afford us, and the lies and games of corrupt businesses, the Plaintiffs have a right to relief under an IIED cause of action.

**Coercion**

**96.** Selene, knew the Plaintiffs, wanted to keep their home, due to the Plaintiffs, stating this on several occasions.

**97.** Due to our ignorance and willingness to do what it took to keep our home, we tried diligently, to do what was necessary to keep our home. After years of trying to find a workable loan resolution with Citi, and then Selene, out of desperation, we hired Assured, to help us get an affordable mortgage, whom had given us ill-advised advice, that we listened to out of ignorance, only made our situation worse.

**98.** Once, we realized Assured, took advantage of us as well, we had no other choice but to find a workout with Selene to keep our home. We felt we had no other choice, than to pay Selene $16,325 to keep our home, because we had no where else to go and didn't know if we could due to the bankruptcy.

**99.** Even though we knew it would cause us severe economic stress, we agreed to pay a down-payment of $3,500, and 3 payments of $4,275. We have four kids and we could not/would not risk having no home for them. So we reluctantly took the deal because we either we took the deal or we would be homeless.

**100.** Due to the amount of economic stress we were experiencing, when MSI contacted us, at the bequest of Selene, to offer us relief from the payments of $4,275, a chance to get our home at current market value, and keep our home, we agreed. We did so reluctantly because we had been deceived so often by anyone dealing with our mortgage, but because it was requested by Selene, and it would ease our burden we agreed.

**101.** We have and still continue to suffer damages as a result of the refi, Selene forced us

23

into. Due to this, the Plaintiffs have a right to relief under a Coercion, cause of action.

**102.** If not for Selene, placing us under a tremendous economic burden and then setting us up with a new refi, of which we were not told would make us liable for the debt again, and voided our right to walk away given to us via the bankruptcy, we would not have agreed to the refi.

**103.** Because, the Plaintiffs, accepted the refi under duress, the contract with the MSI is nullified.

**Tortious Interference with Property Rights**

**104.** Judge Fuller, stated in D.E. 60 that in order for the Plaintiffs, to survive a claim of tortious interference with our property rights, Plaintiffs must show that the defendants interfered with our possessory interests in our home.

**105.** Ocwen, interfered with our Possessory interests of our house by filing fraudulent, assignments of security deeds to our home, both after the Plaintiffs, filed suit. One in October of 2013 and March of 2014. Which, they would've needed to commence a foreclosure action. Because a foreclosure would lead to seizure, it is defined as a meaningful interference with an individual's possessory interest.

**106.** Due to the fraudulent assignments, filed through the clerk of court by Ocwen, Ocwen, legally affected our title.

**107.** Conversion is an interference with another's ownership of property an invasion affecting an interest in the exclusive possession of his property; which Judge Fuller

granted.

**108.** Tortious Interference is an intentional doing of the act which results in the invasion; reasonable foreseeability that the act done could result in an invasion of plaintiff's possessory interest; and substantial damages to the res. All of which the defendants have done.

**109.** Pursuant to 12 U.S. Code § 2605(g) the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due. Ocwen, failed to do this.

**110.** When Ocwen, failed to do this, without the Plaintiffs paying the bills, when Ocwen failed to, the lack of failure could have led to the plaintiffs losing their home by defaulting of either the taxes or homeowners' insurance.

**111.** Selene also interfered with the Plaintiffs possessory rights, by trying to force them into a short sale against their will and in violation of the chapter 7 discharge injunction violation.

**Fraud and Deceit**

**112.** On the Fraud and Deceit claim, Judge Fuller, claimed the Plaintiffs' claim, failed to survive because, they did not specify precise statements, or misrepresentations made, or the time, place or persons responsible for the statements.

25

**113.** The Plaintiffs, entered several call recordings that show Ocwen's agents give the Plaintiffs, false statements, claiming their loan had been sold to various companies.

**114.** The Plaintiffs, also included an email from Ocwen's Ombudsman, on Fri 8/30/13 12:31 PM, stating, Please be advised that the collection of this loan was transferred to Nationstar Mortgage, LLC on May 16, 2013.

**115.** Ocwen, falsely claimed they were in the process of foreclosure, because our account was more than 60 days past due. This was never the case. *See* **(Ex. A section 2 pg 3-4).**

**116.** In September, Plaintiffs, received two statements with misinformation. The statements were from Ocwen as were all the other statements since December of 2012. (None were from Nationstar).

**117.**  Toward the end of September 2013, we got a cancellation notice from Allstate regarding our homeowners insurance policy. Due to, Ocwen's nonpayment of our insurance. Plaintiffs paid Allstate, to keep the policy from lapsing due to nonpayment.

**118.** Ocwen submitted a fake Allonge, with the Plaintiffs' reply to the Plaintiffs' QWR. If you listen to the calls labelled, Allquest & MSI, you will hear that, Allquest, did not purchase our loan.

**119.** As of recently, the Plaintiffs spoke to Allquest and requested any and all info they had pertaining to our loan, and Allquest stated they are not licsensed in the state of GA and did not purchase our loan. Which solidifies the fact that the Allonge is fraudulent.

**120.** On 10/13/2013, Ocwen, filed a fake assignment of security deed. On this deed, it has a mortgage amount listed as $284,900.00. The Assistant Secretaries for MERS were listed as Bao Cindy Fang & Curtis Michael Leason. The MIN: 100588312060535736. In Ocwen's response to the Plaintiffs' QWR The MIN listed is: 100780200001487635 *See* **(Ex. 1) & (Doc 36-2 pg 2)**

**121.** On 03/03/2014, Ocwen, filed a second fake assignment of security deed. On this deed, there is no mortgage amount listed, MERS is listed as the Lender & nominee The MIN listed: 100588312060535736. It has a loan number listed and an investor number. The Assistant Secretaries for MERS were listed as Matthew Robert Marsh & Nhia Indiati Moua. *See* **(Ex. 1)**

 (None were from Nationstar) **42.** *See* **(Ex A section 8 pg 1-2)**

**122.** Ocwen, did not notify the Plaintiffs of the address change, which they claimed was the reason for the payments that were not late but appeared so. Mrs Bennett, informed Ms Versilus, that we never got anything from Ocwen, stating that the payment address had changed. She also asked Tammy if that was what caused the payments appear to be late, why hadn't they explained this in the multitude of calls the Plaintiffs made to Ocwen. Tammy never answered my question.

**123.** On 10/31/13, Mrs Bennett, called Allstate. During the call, Mrs Bennett was informed that Ocwen, had changed the payment of our insurance from mortgagee, to insured, on 04/18/13, yet they were still collecting $277.85 for insurance. *See* **(Ex. K)**

**124.** Since, the filing of the Plaintiffs' initial complaint, the Plaintiffs have found out that the $277.85 was used to pay forced placed insurance, which Ocwen, denied the Plaintiffs were paying, had in their reply to the Plaintiffs' QWR. Plaintiffs demand a full refund. *See* **(Doc 36)**

**125.** The Plaintiffs homeowners' insurance payments were due 02/13 & 11/30/13, but Ocwen, hadn't paid anything until 12/24/13.

**126.** As a result of Ocwen's, actions & misconduct. Plaintiffs, have & are continuing to suffer pecuniary loss as a result.

**127.** The Plaintiffs, are fearful that Ocwen, will continue to try and foreclose on their home even though their loan isn't/wasn't in default, due to Ocwen's history of wrongful foreclosures. *See* (Sealy Davis v Ocwen) class-action lawsuits involving Ocwen's predatory lending, and most recently the consent order Ocwen, signed with the CFPB, after they investigated Ocwen, for deceptive and unfair trading practices.

**128.** Ocwen, was not only illegally taking payments for the homeowners insurance policy, they neglected to pay, they also claimed they were increasing the amount going to escrow to cover the taxes and homeowners insurance.

**129.** The Plaintiffs, were mislead by Ocwen, on several occasions as noted above and as a result of being mislead, the Plaintiffs, have and continue to suffer.

**130.** The MIN number Ocwen, has listed as ours in their reply to our QWR is 100780200001487635. When it is entered into the MERS search it states, "This MIN is

not on any of the assignments associated with our home, nor does it come up as a valid MIN in MERS

**131.** Also as noted above, Selene, Citi, & Assured, also mislead the Plaintiffs, on several occasions, which caused the Plaintiffs undue stress and countless hours of worry and time trying to correct errors that should not have occurred. Due to these reasons, the Plaintiffs are entitled to relief under a fraud and deceit cause of action.

## GA RICO Act

**132.** Judge Fuller, stated, the Plaintiffs claims under the GA RICO Act, failed to survive dismissal, because their claims represented a single extended transaction.

**133.** While Judge Fuller, and the Defense, may be able to make the Plaintiffs, loan, fees and payments, are a part of a single extended transaction. However, due to the consent order, issued by the CFPB, the findings in their investigations, shows that the things the Plaintiffs complained of and the Court, considered one single extended transaction, is a pattern of behavior Ocwen, has been a party to for quite some time.

**134.** Pursuant to the RICO Act, a "pattern of racketeering activity" means that there have been at least two acts of racketeering activity that are interrelated[5] and that were done "in furtherance of one or more incidents, schemes, or transactions." OCGA § 16-14-3(8) (A), What Ocwen did to the Bennett family, and the findings of the CFPB of this pattern of behavior, The Plaintiffs, are entitled to relief under the GA RICO Act.

## REPSA

**135.** The Plaintiffs, claims of RESPA, survived the dismissal action. However, due to the Co-defendants actions, they are to liable under the Plaintiffs', RESPA claims.

**136.** Selene & Citi, failed to make timely and appropriate corrections to Plaintiff's account in violation of RESPA. 12 U.S.C. § 2605.

**137.** Selene, & Citi, violated 12 U.S.C. § 2605(e) in that it did not take timely action to respond to Plaintiff's pleas to correct their account, refused to properly investigate its errors,and failed to follow standard servicer's duties and standards of care.

**138.** Selene & Citi, not only failed to meet, but refused to meet its duties to Plaintiff under 12 U.S.C. § 2605 (e) and/or 2605(k), which has caused actual damages to Plaintiff.

**139.** Selene's, Ocwen's, & Citi's violations of RESPA proximately caused actual damages to Plaintiffs. As a direct result of their violations of RESPA, Plaintiff has suffered severe and extreme mental and emotional stress as well as damage to his credit reputation, and pecuniary losses.

## Violations of Chapter 7 Discharge Injuntion

**140.** Section 524(a)(2) of the Bankruptcy Code. It provides that a bankruptcy discharge "operates as an injunction against an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived under 11 USC § 524.

**141.** If a debt is discharged, that creditor cannot force you to pay that particular debt.

This means that the creditors cannot legally file an action against you (for that debt), continue an action they had filed before the bankruptcy, send you collection letters or harass you in any other way.

**142.** An agreement seeking to reaffirm pre-discharge debt and incorporate it into a new post-discharge debt is only enforceable if numerous requirements are met, including receipt of a bankruptcy court's express approval of the agreement. See 11 U.S.C. § 524(c)

**143.** Any party, that knowingly violates the discharge injunction, the court may properly hold that party in civil contempt. *See* (McClure v. Bank of America, Adv. No. 08-4000 Bankr. N.D. Tex. 11/23/09).

**144.** Any such Loan Modification Agreement may be deemed by the Bankruptcy Court as an illegal violation of the Bankruptcy discharge which could result in voiding the Modification and raising damage claims against the lenders.

**145.** Due to the coercion of Selene and our high payments, which we were forced to pay to keep our home, we were pushed into getting a refinance. To make us do the refi and get a new loan to that voided our discharge and personal liability. The loan was an improper assertion of personal liability after discharge.

**146.** There was no proper reaffirmation agreement. All actions taken after discharge, other than foreclosure can be considered as improperly servicing a loan subject to a Chapter 7 discharge. Otherwise known as discharge violations. The mortgage, is invalid

and unenforceable, and has been since the inducement.

**147.** The lender's only recourse after the bankruptcy is to foreclose on the property if the party stops voluntarily paying. The Plaintiffs, did not, but the defendants did all they could do to make it appear as such.

**148.** Unless reaffirmed, not only is the loan liability extinguished, but any further action to collect upon the discharged debt is prohibited.

**149.** After the Chapter 7 discharge, the focus changes from entering into improper reaffirmation agreements to acts in violation of this discharge injunction. The discharge order makes clear that lenders can not take any action to collect a debt as a personal obligation of the borrower. However, they ran afoul of this prohibition, in a variety of ways.

**150.** All loss mitigation efforts (e.g., loan modifications, forbearance and repayment plans, short sales, etc) involve communications with the debtor which could reasonably be construed as debt collection actions even if the lenders include language that states that they are only acting against the property. That may not be enough. If the loan is secured by real property where the value of the property is less than the amount owed on the loan, any requirement that payments be made essentially *could* be construed as a requirement that the borrower remain personally liable. Accordingly, a payment plan, loan modification or short sale where there is no equity in the property could be found

32

to be a violation of the discharge injunction. As was the case for our home and why we were allowed a principal reduction because the value of our home had dropped significantly, and a short sale, would have made us liable for the difference of the balance. Therefor, the Plaintiffs are entitled to relief under a coercion cause of action.

*See* (Ex A pg 21 email dated: Tue 7/10/12 6:53 PM)

## Civil Conspiracy

**151.** According to GA Law, for a Civil Conspiracy cause of action to stand, a Plaintiff, must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort.

**152.** In D.E. 60 p 38-39, Judge Fuller stated, "And while the Plaintiffs, do discuss an alleged conspiracy to convert the their property (a claim that the Court has found valid), their allegations fail to show that another party acted in concert with Ocwen to commit a tort.

**153.** Citi,Selene, & Ocwen conspired together to defraud the Plaintiffs over a period of 5 years.

**154.** When the Plaintiffs, continued to question Citi's practices, Citi, sold the loan to Selene. Selene, continued the practices, Citi started until, the Plaintiffs, tried to bring in a outside party because Selene, kept stringing them along in the hopes of a loan modification.

**155.** After the Plaintiffs, listened to ill-advised advice, from Assured, and Selene started

the foreclosure, Selene, knew the Plaintiffs were under duress and had been so, for a while, because of the extended amount of time, the Plaintiffs, were trying to get a modification, because Selene, kept raising the Plaintiffs payments. Selene, agreed to a forbearance, that only added to the Plaintiffs duress. After establishing the $3,500 down-payment, and the 3 month payments of $4,275, Selene, had MSI contact us to talk us into a refi.

**156.** Due to the Plaintiffs, state of duress, at the time of the refi opportunity, and all of the parties acts in concert to place the Plaintiffs, in a state of duress, the Plaintiffs, have a claim to relief under, a Civil Conspiracy, cause of action.

## Punitive Damages

**157.** In Judge Fuller's R & R, the Plaintiffs' claims for Punitive damages survived, the Defendant's, motion to dismiss due to the Plaintiffs' claim of Conversion.

**158.** The Plaintiffs, are further addressing this matter because of the addition of the Co-defendants.The Co-defendants, are liable for Punitive damages due to the Plaintiffs, above mentioned allegations and the  incorporated claims as stated in the above paragraphs as if fully set out herein.

**159.** As such, the Plaintiffs' are entitled to Punitive damages from all of the Defendants listed in this joinder.

## CONCLUSION

Under the parole evidence rule, the Plaintiffs, wish to include all of the introduced claims, Co-defendants, as well as the exhibits, so the Court will be able to understand

the Plaintiffs' contentions, and the enormity of the isses the Plaintiffs have been dealing

with for years, at the hands of defendants. Also the Plaintiffs would asked the Court to

allow the additional pages, as they were necessary to help the Plaintiffs, receive justice.

**Wherefore,** the Plaintiffs prays that we recover the following: Any and all fees, and

all such other and further relief as this Court deems just and proper: The Plaintiffs

request Actual Damages to be proven at trial; Emotional damages; General damages;

Treble damages; Damage to credit reputation; Expenses of litigation, Punitive damages;

As well as, such other damages as are appropriate in this case. The Plaintiffs, have

properly, filed a motion to quiet title in the county where the property in question is

located. The case number is 14CV-0891-2.

Damages as are appropriate in this case as well as cost of suit, on any and all counts,

fees, and all such other and further relief as this Court deems just and proper sustained

due to Ocwen's wrongful acts in excess of the jurisdictional limits to be determined at

trial.

Respectfully Subm                                                    June 8, 2014

Cobrey & Maryam Bennett
Pro Se Litigants
965 Summerfield Dr
Cumming, GA 30040
Phone: (678) 689-9601
Fax: (770) 887-3109
Email: maryamthomas@hotmail.com

**FONT CERTIFICATION**

**COMES NOW** Cobrey & Maryam Bennett., the Plaintiffs and hereby certifies that the within and foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDICIAL NOTICE. The motion and memorandum in support of said motion was prepared using Times New Roman, 14-point font in accordance with Local Rule 5.1.

The Plaintiffs hereby declares that a copies of this motion will be sent to Ocwen's

defense counsel as well as to the additional parties on the same day a copy is mailed to

the Court.

June 8, 2014

Cobrey and Maryam Bennett
Pro Se Litigants
965 Summerfield Dr
Cumming, GA 30040
Phone: 678-689-9601
Fax: 770-887-3109
Email: maryamthomas@hotmail.com