IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| COBREY BENNETT and | : | |
| MARYAM BENNETT, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | 2:13-CV-00243-WCO-JCF |
| OCWEN LOAN SERVICING, LLC, | : | |
| | : | |
| Defendant | : | |

## ORDER and FINAL REPORT AND RECOMMENDATION

This case comes before the Court on Defendant Ocwen Loan Servicing, LLC's Motion for Summary Judgment (Doc. 93) and Plaintiffs Cobrey and Maryam Bennett's Motion for Summary Judgment (Doc. 96). It is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 93) be **GRANTED** and that Plaintiffs' Motion for Summary Judgment (Doc. 96) be **DENIED**. Additionally, Plaintiffs' Motion for Declaratory Judgment (Doc. 103) and Motion for Leave to Add Parties and Claims (Doc. 81) are both construed to be motions to amend, and are both **DENIED**.

## PROCEDURAL HISTORY[1]

---

[1] The undersigned recounts only those elements of this matter's long procedural history which are relevant to the pending motions.

This case arises out of Defendant Ocwen Loan Servicing, LLC's administration and servicing of Plaintiff Cobrey Bennett's mortgage loan.  In late September 2013, Plaintiffs, proceeding *pro se*, filed this action against Defendant in the State Court of Forsyth County.  (Doc. 1-2 at 1-23).  Defendant removed the action to this Court (Doc. 1), and shortly thereafter Plaintiffs submitted an Amended Complaint.  (Doc. 6).  Two weeks later, Plaintiffs sought leave from the Court to file another Amended Complaint, (Doc. 9), which the Court granted on November 26, 2013 (Doc. 15).   The Second Amended Complaint (Doc. 16) remains the operative pleading.  Plaintiffs assert the following causes of action: (1) violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Count I); (2) negligence (Count II); (3) intentional infliction of emotional distress ("IIED") (Count III); (4) unfair practice (Count IV); (5) rescission due to fraud (Count V); (6) violations of O.C.G.A. §§ 7-1-1013(6) and (9)(A-C) (Count VI); (7) breach of fiduciary duty (Count VII); (8) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (Count VIII); (9) conversion (Count IX); (10) tortious interference with property rights (Count X); (11) violations of the Georgia RICO act (Count XI); (12) fraud and deceit (Count XII); (13) attorneys' fees and expenses (Count XIII); (14)

rescission due to fraud (Count XIV)[2]; (15) punitive damages (Count XVI).[3]   (*See generally id.*).

In December 2013, Defendant filed a partial motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. 19).  It sought to dismiss all of Plaintiffs' claims in the Second Amended Complaint except for their claim under RESPA (Count VIII).  (*See id.*).  On August 12, 2014, the Court granted in part and denied in part Defendant's partial motion to dismiss leaving only Plaintiffs' claims for RESPA violations (Count VIII), conversion (Count IX), and punitive damages (Count XVI).  (Doc. 74).

At various stages of the litigation, Plaintiffs have attempted to amend their complaint to add more claims and parties (*See* Docs. 22, 56, 72, 80) each of which has been denied for futility or failure to show good cause as required by Rule 16. (*See* Docs. 74, 77, 82).   Plaintiffs remain undeterred, despite these repeated failures, and on September 2, 2014, filed a motion for leave to add parties and claims.  (Doc. 81).  On February 2, 2015, Plaintiffs attempted to add claims again, this time veiled as a motion for Declaratory Judgment (Doc. 103).

On December 5, 2014, Defendant's filed its Motion for Summary Judgment (Doc. 93) along with a statement of material facts (Doc. 93-2) and a number of

---

[2] Count XIV of Plaintiffs' Second Amended Complaint simply repeats Count V. (*See* Doc. 16 at ¶¶ 66, 100).

[3] Plaintiffs' Second Amended Complaint does not contain a Count XV.  (*See* Doc. 16 at pg. 24).

exhibits (Docs. 93-3 through 93-11).  On December 22, 2014, Plaintiffs filed a motion for summary judgment (Doc. 96) along with attachments (Docs. 96-1, 96-2, 96-3).  Also on December 22, 2014, Plaintiffs responded to Defendant's motion for summary judgment.  (Doc. 95).  On January 5, 2015 Defendant filed a reply to Plaintiffs' response to Defendant's motion for summary judgment (Doc. 99) and on January 9, 2014 Defendant filed a response to Plaintiffs' motion for summary judgment (Doc. 100).

On February 12, 2015 Defendant filed an emergency motion for a restraining order seeking, in part, to halt the constant stream of filings from Plaintiff.  (Doc. 107).  Following a hearing, District Judge William C. O'Kelley granted the Defendant's motion, restraining Plaintiffs from filing any further documents at least until the undersigned was able to provide this report and recommendation on Defendant's motion for summary judgment.  (Doc. 112).

### FACTUAL HISTORY[4]

---

[4] These facts are taken from Defendant's statement of material facts (Doc. 93-2) as well as the Second Amended Complaint (Doc. 19) and other evidence on the record.  Plaintiffs statement of material facts, (*See* Doc. 96 at 4-9) are not supported by references to the record and therefore, pursuant to Local Rule 56.1, the undersigned will not consider them.  Further, many of these "undisputed material facts" are just conclusory legal statements and not the facts of this case at all; others are facts that have no relevance to the remaining causes of action; and nearly all are disputed by the Defendant.  Plaintiffs on the other hand, did not respond to the Defendant's statement of undisputed material facts and therefore the facts, to the extent Defendant's statements are actually supported by the record evidence, will be considered undisputed.

On November 19, 2012, Mr. Bennett obtained a mortgage loan for $284,900.00 from Mortgage Services III, LLC, secured by property at 965 Summerfield Drive, Cumming, Georgia 30040, and evidenced by a promissory note executed in favor of Mortgage Services and its successors and assigns, promising to repay the loan amount. (Def. SMF ¶ 1). Also on that date, Plaintiffs signed a Security Deed in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Mortgage Services and its successors and assigns, (Doc. 1-1 at 1), and Defendant obtained the rights to service the loan from another creditor. (Doc. 16 at ¶ 5).

Defendant maintains multiple servicing centers, and initially a Florida center serviced Plaintiffs' loan. (Def. SMF ¶ 2). In 2013, the handling of Plaintiffs' account was transferred to Defendant's servicing center in Iowa. (Def. SMF ¶ 2). Loan payments were due on the first of each month, but Plaintiffs fell behind and their February 2013 loan payment was received on March 4; the March payment was received on March 20; April payment was received on April 17; and May payment was received on May 16. (Def. SMF ¶ 3). Each of these payments was sent to the Florida center causing a delay as the payments then had to be transferred to Iowa office. (Def. SMF ¶ 4). The Iowa office received the February and March payments on April 8, the April payment on May 13 and the May payment on June 7, however each was dated as if received on the dates they were

5

received by the Florida office.  (Def. SMF ¶ 5).  This delay in processing caused Plaintiffs' account to appear to be delinquent.  (Def. SMF ¶ 4).  As a result of the apparent delinquency, Defendant sent a third party to the subject property on March 25, 2013 to perform an inspection to prepare the property for a potential foreclosure.  (Doc. 16 ¶¶ 6-7).  The cost of the inspection was applied to Plaintiffs' account, however, on May 7, 2013 the fee was waived.  (Def. SMF ¶ 7; *see also* Doc. 93-9 at 3).

On May 6, 2013, Defendant received correspondence from Plaintiffs requesting detailed information regarding Plaintiffs' mortgage which was treated as a "Qualified Written Request" (QWR).  (Def. SMF ¶ 6; *see also* Doc. 93-6).  On May 14, 2013 Defendant sent a written response to Plaintiffs acknowledging receipt of the correspondence.  (Def. SMF ¶ 8; *see also* Doc. 93-7).  On May 24, 2013 Defendant provided an itemized response to all 25 of the requests contained in Plaintiffs' correspondence with attached documentation where appropriate. (Def. SMF ¶ 9; *see also* Doc. 93-8).

In response to a May 28, 2013 complaint to the Consumer Financial Protection Bureau, Defendant sent a letter to Plaintiffs on June 11, 2013 explaining the issues resulting from the payments being sent to the wrong location.  (Def. SMF ¶ 10; *see also* Doc. 93-9).  The letter explained why the account appeared to be delinquent and detailed the dates the Florida office received the payments and

when they were received in Iowa. (*See* Doc. 93-9). The letter also stated that the payments would be assigned an effective date representing when they were first received and provided Plaintiffs with the correct address for future payments. (*Id.*). As of the date of that letter, there were no fees or late charges on Plaintiffs' account, but the June payment had yet to be received. (Def. SMF ¶ 12). Despite having been given this information, as well as direct contact information for Executive Account Manager Tammy Versluis to handle any further inquiries, Plaintiffs still inexplicably sent their next two payments, received July 2, 2013 and July 22, 2013, to the Florida location. (Def. SMF ¶¶ 13, 17). In August and September Plaintiffs sent Defendant four separate letters and electronic correspondence complaining about the account. (Def. SMF ¶ 14). In these letters, Plaintiffs demanded that Defendant void the loan and pay $10,000 to Plaintiffs for "emotional distress." (Def. SMF ¶ 14).

In a letter dated September 10, 2013, Defendant once again explained the issue regarding the payments being submitted to the incorrect location and provided an update on the status of the account. (Doc. 93-11). The letter indicated that the February through July payments were properly credited to the account and noted that payment for August or September had not been made. (*Id.*). The letter also noted that, as a courtesy, all late fees had been waived. (*Id.*). Defendant did not make any reports to credit agencies from May 2013 through November 2013.

(Def. SMF ¶ 26).  Defendant has not received any payments on Plaintiffs' account since the September 10, 2013 letter was sent and Plaintiffs are currently in default since August 2013 under the terms of the note and security deed.  (Def. SMF ¶ 28).

## DISCUSSION

### I.   Plaintiffs' Motion To Add Parties And Claims And Motion For Declaratory Judgment

These two motions each attempt to add additional claims and parties to the present action and therefore are due to be construed as motions to amend.  (*See* Docs. 81, 103).  Plaintiffs have already attempted to assert these actions multiple times.  (*See* Docs. 22, 56, 72, 80).  Many of Plaintiffs' claims were previously dismissed; however, as Judge O'Kelley noted "plaintiffs continue to assert non-viable claims via motion.  For example, their 'Motion for a Declaratory Judgment' [103] is nothing more than a transparent attempt to revive equitable claims that the court found to be dead on arrival."  (Doc. 112 at 1).[5]

As was explained in this Court's August 20, 2014 Order striking Plaintiffs' self-styled "Joinder of Co-Defendants" (Doc. 77) as well as the Court's September

---

[5] Plaintiffs also filed a motion to compel related to requests for admissions and document requests.  (*See* Doc. 87).  The requests at issue in that motion sought information related to claims dismissed before the motion was filed.  Plaintiffs have repeatedly tried to revive these dismissed claims through various means, including motions to add parties and claims and a motion for declaratory judgment (*See, e.g.,* Docs. 81, 103).  The motion to compel (Doc. 87) is being addressed in a separate order.  It is worth emphasizing that none of the information sought in the motion to compel would have any impact on the disposition the motions addressed in this report and recommendation.

2, 2014 Order denying Plaintiffs' Motion for Leave to Add Additional Claims (Doc. 82), once a scheduling order limits the time to amend pleadings, an amendment will be allowed only if Rule 16's "good cause" standard is satisfied. The Court has already concluded that it was not. (*See* Doc. 77 at 5 (finding lack of diligence justified denying motion to amend where "Plaintiffs have not even attempted to show that these additional parties could not have been sued in the original complaint or that these allegations could not have been made during the time the Scheduling Order allowed pleadings to be amended")). Plaintiffs' latest filing does not change this outcome. In fact, Plaintiffs have not even attempted to make a showing of good cause in either of these motions.

Accordingly, Plaintiffs' motions to amend (Docs. 81, 103) are **DENIED**.

## II.   Motions For Summary Judgment

Defendant seeks summary judgment as to Plaintiffs' three remaining claims: RESPA claim (Count VIII), claim for conversion (Count IX), and punitive damages claim (Count XVI). (Doc. 93-1). To go along with the motion, Defendant has provided a statement of material facts. (Doc. 93-2). Plaintiffs responded to the motion (Doc. 95) however, they did so with no specificity. Instead, Plaintiffs' respond merely with two pages of allegations questionably relevant to the three remaining claims. (*See id.* ("When you also factor in, that assignments of security deeds contain forged signatures, and fraudulent

9

information and filed with the Clerk of Courts, the entire loan was fraudulent since it's inducement"; "How can a single plat of land, legally have two security deeds? Simple it can not, or at least not without slandering the title, which is also illegal.")).  Further, Plaintiffs did not respond to Defendant's statement of material facts and, therefore, to the extent the facts are supported by the record, they are deemed to be undisputed.  *See* Local Rule 56.1, N.D.Ga.  Plaintiffs have their own motion for summary judgment (Doc. 96) which purports to contain a statement of material facts, however, the facts contain no reference to record evidence as required by Local Rule 56.1(B) and Fed. R. Civ. P. 56(c)(1) and, for the most part, they are conclusory legal statements.  (*See* Doc. 96 at 4-9 ("6. In February of 2013, both of the security deeds involving the Plaintiffs' home were canceled.  This material fact is not in dispute."; "22. Because the Plaintiffs' loan was securitized, and the original lender has already been paid in full[, t]he debt has been written off and should be considered settled.")).  Defendant has responded to Plaintiffs' material facts objecting to every enumerated paragraph, in some cases on numerous grounds.  (*See* Doc. 101).  In their legal argument in support of their motion for summary judgment (Doc. 96), Plaintiffs purport to address all the claims from the Second Amended Complaint, ignoring the fact that the Court has already dismissed a majority of these claims.  (*See* Doc. 74).  The three sections that do refer to the remaining claims mostly simply reassert the allegations of the

Second Amended Complaint (as well as other, generally unsupportable, allegations picked up by Plaintiffs along the way) instead of making arguments for or against summary judgment.  (*See* Doc. 96 at 15-16, 24).  For the purposes of consideration of these motions, the Court will consider the relevant portions of Plaintiffs' motion for summary judgment both as a motion and as a response to Defendant's motion for summary judgment.

A.    **Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by[] . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1).  The moving party has an initial burden of informing the court of the basis for the motion and showing that there is no genuine issue of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986); *see also Arnold v. Litton Loan Servicing*, *LP*, No. 1:08-cv-2623-WSD, 2009 U.S. Dist. LEXIS 119787, at *10 (N.D. Ga. Dec. 23, 2009) ("The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact." (citing

*Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999))).  If the non-moving party will bear the burden of proving the material issue at trial, then in order to defeat summary judgment, she must respond by going beyond the pleadings, and by her own affidavits, or by the discovery on file, identify facts sufficient to establish the existence of a genuine issue for trial.  *See Celotex*, 477 U.S. at 322, 324.  "No genuine issue of material fact exists if a party has failed to 'make a showing sufficient to establish the existence of an element . . . on which that party will bear the burden of proof at trial.' "  *AFL-CIO v. City of Miami*, 637 F.3d 1178, 1186-87 (11th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322).

Furthermore, "[a] nonmoving party, opposing a motion for summary judgment supported by affidavits[,] cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial."  *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991), *cert. denied*, 506 U.S. 952 (1992); *see also* FED. R. CIV. P. 56(c)(1)(B), (c)(4).   The evidence "cannot consist of conclusory allegations or legal conclusions."  *Avirgan*, 932 F.2d at 1577.  Unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment.  *See Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 714 (11th Cir. 1984).

For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (internal citations omitted).  It is not the court's function at the summary judgment stage to determine credibility or decide the truth of the matter.  *Id.* at 249, 255.  Rather, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor."  *Id.* at 255.

### B.   <u>Plaintiffs' Claims</u>

#### 1. RESPA

Plaintiffs' RESPA claim alleges that Defendant "failed to make timely and appropriate corrections to [the] account in violation of RESPA" and failed to "take timely action to respond to [Plaintiffs'] pleas to correct [the] account, refused to properly investigate its errors, failed to correct false reporting to the credit bureaus and failed to follow standard servicer's duties and standards of care."  (Doc. 16 ¶¶ 74-75).  Defendant makes four arguments in support of summary judgment on this claim: (1) Plaintiffs' correspondence to Defendant was not sufficient to qualify as a QWR under the statute; (2) Defendant sufficiently responded to Plaintiffs' QWR; (3) Defendant properly investigated the issue and rectified it, including applying all

payments and removing all late charges, within a reasonable time; and (4) Defendant waited longer than required by the statute before making any negative report regarding Plaintiffs to credit agency.  (Doc. 93-1 at 13-19).

"Under RESPA, loan servicers 'ha[ve] a duty to respond to a borrower's inquiry or qualified written request.' "  *Malally v. BAC Home Loan Serv., LLC*, No. 3:10–CV–0074–JTC–JFK, 2010 U.S. Dist. LEXIS 136555, at *25 (N.D. Ga. Oct. 8, 2010) (citing 12 U.S.C. § 2605(e)), *adopted by* 2010 U.S. Dist. LEXIS 131485 (N.D. Ga. Dec. 13, 2010).  "Among other things, a QWR must 'include[ ] a statement of the reasons ... that the account is in error or provide [ ] sufficient detail to the servicer regarding other information sought by the borrower.' "  *Graham v. MERS, Inc.*, No. 2:11–CV–00253–RWS, 2012 U.S. Dist. LEXIS 20704, at *10-11 (N.D. Ga. Feb. 17, 2012) (citing 12 U.S.C. § 2605(e)(1)(B)(ii)).  To state a RESPA claim for violation of section 12 U.S.C. § 2605(e), a plaintiff must allege facts showing that: "(1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period of 20 days or 60 days, and (4) the plaintiff is entitled to actual or statutory damages."  *Jones v. Vericrest Fin., Inc.*, No. 1:11–CV–2330–TWT–CCH, 2011 U.S. Dist. LEXIS 151458, at *42 (N.D. Ga. Dec. 7, 2011), *adopted by* 2012 U.S. Dist. LEXIS 4167 (N.D. Ga. Jan. 12, 2012).

RESPA defines a qualified written request as a "written correspondence…that: includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). In *Guerra v. Just Mortg., Inc.*, No. 2:10-CV-00029-KJD-NJK, 2013 U.S. Dist. LEXIS 53038 (D. Nev. Apr. 12, 2013), the court considered a purported QWR that describes Plaintiffs' "QWR" as well:

> The letter states that it is intended to be a QWR and includes non-specific boiler-plate language stating generally that it relates to loan servicing and contains vague references to sales and transfer of servicing rights. However, the letter is primarily focused on disputing the validity of Plaintiff's debt, seeking voluminous documents relating to the ownership of the obligation, and requesting evidence which would verify the validity of the debt. Plaintiff does not state a specific belief that there was a servicing error on his loan or that there was other improper action related to servicing of the debt.

*Id.* at *8-9.[6] The court found that plaintiff's letter was not a valid QWR. *Id.* at *9.

---

[6] The court noted "that most of the language in Plaintiff's purported QWR is copied directly from various internet sites purporting to provide the 'mother of all QWRs.' " *Guerra*, 2013 U.S. Dist. LEXIS 53038 at *8 n. 2. A quick internet search revealed that Plaintiffs' purported "QWR" in this case is also available, verbatim with the exception of blanks for some of biographical information of Plaintiffs, on multiple internet websites, one even launches the document in Microsoft Word so the individual can just fill in the blanks and mail it to a loan servicer. *See e.g.*, http://mariokenny.me/2014/06/15/debt-verification-notice/ (last visited Mar. 10, 2015); hofj.org/virtualoffice_files/FirstclassQWR.docx (last visited Mar. 10, 2015).

In this case, Plaintiffs submitted a letter that is very similar to the one described in *Guerra*.  (*See* Doc. 93-6).  The letter instructs that it is to be treated as a QWR, yet provides no specific information regarding the Plaintiffs or the subject account except for identifying the borrowers name and the property location.  (*Id*.).  The letter makes 25 enumerated demands, many of which clearly appear to "primarily focus[] on disputing the validity of Plaintiff[s'] debt."  (*Id*. ("2. Full name, address and telephone number of the actual entity that funded the transaction.";  "7. A physical location (address) of the original promissory note, original security instrument, and all assignments of the security instrument…"; "10. Proof of the true sale of the note from alleged Lender to investors…")).  In the letter, Plaintiffs make requests regarding the history of the loan and any potential charges, however, they present all of it in general terms.  (*Id*.).  In no way do Plaintiffs "state a specific belief that there was a servicing error on [the] loan or that there was other improper action related to servicing of the debt."  *Guerra*, 2013 U.S. Dist. LEXIS 53038, at *9.  As a result, the letter sent by Plaintiffs cannot meet the requirements of a QWR and therefore, the Plaintiffs do not have a valid claim under RESPA.

Even if this correspondence did qualify as a QWR, Defendant's response was sufficient to prevent any actual damages to Plaintiffs which can be attributed to any shortcomings in Defendant's response.  While Defendant admits to some

16

confusion regarding the application of payments in the first half of 2013, once it received the correspondence from Plaintiff, Defendant investigated the issue and, at the absolute latest, resolved the issue by September 10, 2013.[7]  (*See* Doc. 93-11). Defendant applied each payment made by Plaintiffs to their account and even waived any fees, for late payment or otherwise, whether or not the fees were actually warranted.  (*See Id.*).

Plaintiffs assert that they "suffered severe and extreme mental and emotional stress as well as damage to [Plaintiff Cobrey Bennett's] credit reputation, and pecuniary losses" and that they are entitled to "actual damages [], including but not limited to emotional damages."  (Doc. 16 ¶¶ 77-78).  No evidence has been presented, however, to establish that their alleged damages were caused by Defendant's purported failure to adequately respond to their QWR request, as opposed to its efforts to collect Plaintiffs' loan payments and fear of a potential foreclosure.  It is not enough for Plaintiffs to allege and attempt to prove that they suffered some harm as a result of Defendant's attempts to collect what was owed; they must show that they were harmed as a result of some purported failure in the

---

[7] While, out of an abundance of caution, Defendant argues that the issue was resolved by September 10, 2013, the undersigned recognizes that the May 24, 2013 correspondence to Plaintiffs addresses all of the items contained in the purported QWR (*See* Doc. 93-8) and the June 11, 2013 correspondence clearly explains the issue with Plaintiffs' payments and that it had been resolved (*See* Doc. 93-9). Therefore, it appears Defendant complied with its legal obligation by no later than June 11, 2013.

response to the QWR. *See, e.g.*, *Echeverria v. BAC Home Loans Serv., LP*, No. 6:10-cv-1933-Orl-28DAB, 2012 U.S. Dist. LEXIS 44487, at *7-8 (M.D. Fla. Mar. 30, 2012) (finding that plaintiff failed to "plead a causal link between" alleged damages, including "loss of credit, emotional harm, additional medical expenses, embarrassment and humiliation," and the defendant's violations of RESPA); *Jones*, 2011 U.S. Dist. LEXIS 151458, at *53-54 (finding that plaintiff failed to state a claim under RESPA because she "has not included any factual allegations explaining how Flagstar's failure to provide an adequate response to the QWR caused her to suffer any damages"); *see also Steele v. Quantum Serv. Corp.*, No. 3:12-CV-2897-L, 2013 U.S. Dist. LEXIS 88812, at *25-26 (N.D. Tex. June 25, 2013) (finding that plaintiff failed to adequately plead that "mental anguish and acute psychic trauma" were caused by failure to respond to QWR as opposed to foreclosure); *Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 U.S. Dist. LEXIS 172058, at *13-14 (S.D. Ohio Dec. 4, 2012) (finding that plaintiffs "failed to allege facts linking plaintiffs' anxiety and emotional distress to the alleged deficiencies in defendant's response to the QWR," as opposed to "the possibility of foreclosure, which results from an alleged failure to comply with loan terms"). Overall, Plaintiffs have failed to provide evidence that Defendant did not sufficiently respond to the alleged QWR, and they also have failed to identify

any evidence suggesting that Defendant's response to the alleged QWR caused them any harm.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** as to Plaintiffs' RESPA claim (Count VIII).

### 2. Conversion

Plaintiffs allege that Defendant converted their property when it failed to apply loan payments correctly to the account, and refused to return the mortgage payments and refund "all the numerous unauthorized fees" when the return of the payments and fees was requested.  (Doc. 16 at ¶ 81).  To allege a plausible claim for conversion, a plaintiff must show "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property."  *Capital Fin. Serv. Grp., Inc. v. Hummel*, 721 S.E.2d 108 (Ga. Ct. App. 2011).  "Where a defendant originally obtained lawful possession of property, the plaintiff must show actual conversion or demand for the property's return coupled with the defendant's refusal to return the property."  *Chung v. JPMorgan Chase Bank, N.A.*, 975 F.Supp 2d 1333, 1346 (N.D. Ga. 2013) (quoting *Stroman*, 852 F. Supp. 2d at 1379); *see also Williams v. Nat'l Auto Sales, Inc.*, 651 S.E.2d 194 (Ga. Ct. App. 2007) (explaining that "evidence that a defendant, who has lawfully come into possession of the plaintiff's property, unlawfully refuses to return the plaintiff's

property after the plaintiff demands its return, is one way to show that the defendant has exercised unauthorized dominion over the property and has thereby converted the property"); *Taylor v. Powertel, Inc.*, 551 S.E.2d 765 (Ga. Ct. App. 2001) ("[W]hen someone comes into lawful possession of personal property, in the absence of a demand for its return and a refusal to return the personal property, there is no conversion.") (citing *McDaniel v. White*, 230 S.E.2d 500 (Ga. Ct. App. 1976)).

Here, Defendant originally acquired lawful possession of Plaintiffs' loan payments and fees in accordance with the loan agreement. (*See* Doc. 19-2). Plaintiffs allege, however, that after they noticed that Defendant failed to appropriately apply their payments to the outstanding debt, and charged them unauthorized fees, they "demanded numerous times that [Defendant] return and/or apply all of their payments to the account correctly" and "refund all the numerous unauthorized fees," but Defendant failed to do so. (Doc. 16 at ¶¶ 80, 81). This allegation was sufficient to overcome a motion to dismiss, however, the undisputed record evidence now available clearly shows that all payments made by Plaintiffs were, eventually, credited to their account and that any fees assessed were waived and never paid. (*See* Docs. 93-7 through 93-11). Therefore, even though Plaintiffs made a "demand" of sorts for the "return" of the money, they cannot show that the Defendant failed to make the return, which is a required element of a claim for

20

conversion.  The correspondence between the parties shows that Defendant worked through the issue with the payments going to the wrong location shortly after becoming aware of it and Defendant was doing so before Plaintiffs ever complained of the problem.  (*See id.*).  Plaintiffs cannot set out a valid conversion claim as, even if they could show that Plaintiffs in some way misappropriated the funds, once the demand for a return was made, the funds were properly credited to the account.  The undisputed record evidence shows that there is no genuine issue of material fact as to whether Defendant converted Plaintiffs' property.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** as to Plaintiffs' conversion claim (Count IX).

### 3.    Punitive Damages

Plaintiffs' final claim is for punitive damages.  The punitive damages claim survived the previous motion to dismiss only because Plaintiffs' conversion claim remained pending and Georgia law allows punitive damages to be imposed against a party liable for conversion.  (*See* Doc. 74).  At this stage, with summary judgment due to be granted on Plaintiffs' conversion claims, Plaintiffs no longer have any legal theory which could arguably justify an award of punitive damages.

Accordingly, the undersigned **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED** as to Plaintiffs' claim for punitive damages (Count XVI).

## III.   Sanctions

In its Motion for Temporary Injunction and to Enjoin Future Filings Pending Further Order of the Court, Defendant sought "an order sanctioning Plaintiffs for their repeated filings with no legal support." (Doc. 107 at 5). When granting Defendant's motion for an injunction, the District Judge directed the undersigned "to determine whether plaintiffs should be sanctioned for their conduct during this case." (Doc. 112 at 8).

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting*, 561 F.3d 1298, 1306 (11th Cir. 2009) (quoting *Chambers v. NASCO, INC.*, 501 U.S. 32, 43-44 (1991)). But a Court must exercise this power with "restraint and discretion." *Id*. " '[B]ad faith is key to unlocking the court's inherent power,' and a court exercising its inherent power to issue sanction must 'make specific findings as to the party's conduct that warrants sanctions.' " *In re Porto*, 645 F.2d 1294, 1304 (11th Cir. 2011) (quoting *Bryne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011)). A party acts in bad faith when it "knowingly or recklessly raises a

frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Bryne*, 261 F.3d at 1121.

Plaintiffs have filed many repetitive and meritless motions, including repeated attempts to revive claims already dismissed and repeated requests for the Court to take judicial notice of materials that do not qualify for such treatment. Additionally, Defendant has alleged that Plaintiffs have placed harassing phone calls to counsel and the corporation's officers. By virtue of Judge O'Kelley's order, Plaintiffs have been temporarily enjoined from submitting filings and explicitly warned by the Court that a continuation of these behaviors could lead to monetary sanctions. (Doc. 112 at 5-7). Up to this point, Plaintiffs' conduct has been troublesome, but they have yet to file multiple law suits in this Court on the same matter and it appears they have not defied an order of this Court. While Plaintiffs' filings have largely been, as Judge O'Kelley aptly put it, "nonsense," Plaintiffs had not yet been explicitly warned that sanctions might be forthcoming before the order granting the injunction. (*See* Doc. 112).

Because Plaintiffs have not defied an order of this Court, it would be premature for the Court to impose sanctions at this time. *Compare Graham v. Wells Fargo Bank, N.A.*, No. 1:12cv1034, 2013 U.S. Dist. LEXIS 88436 (M.D. Ala. Jun. 24, 2013) (finding sanctions inappropriate where *pro se* Plaintiff had not: filed multiple lawsuits in the court, yet been warned regarding making frivolous

legal arguments, openly defied a court order, engaged in contemptuous behavior or presented legal arguments in a vexatious or harassing matter), *with Watts v. Taylor, Bean & Whittaker Mortg. Corp.*, No. 5:10-CV-448 (CAR), 2011 U.S. Dist. LEXIS 71244 (M.D. Ga. July 1, 2011) (imposing sanctions where Plaintiff continued bad faith conduct in spite of multiple warnings from the court). While the undersigned believes sanctions are not appropriate at this time, any further conduct by Plaintiffs inconsistent with any order of this Court, or further harassing lawsuits presenting these same claims, could and most likely will result in sanctions.

## CONCLUSION

Plaintiffs' Motion for Declaratory Judgment (Doc. 103) and Motion for Leave to Add Parties and Claims (Doc. 81) are **DENIED**. It is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 93) be **GRANTED** as to all of Plaintiffs' remaining counts. Further, it is **RECOMMENDED** that Plaintiffs' Motion for Summary Judgment (Doc. 96) be **DENIED**. Additionally, the undersigned **RECOMMENDS** that Plaintiffs be advised that filing any additional complaints regarding the mortgage at issue in this case, either originating in this Court or properly removed by a defendant to this Court, will likely result in the imposition of sanctions, possibly including monetary sanctions.

24

The Clerk is **DIRECTED** to terminate referral of this matter to the undersigned magistrate judge.

**SO ORDERED AND RECOMMENDED** this 12th day of March, 2015.

 /s/ J. CLAY FULLER
J. CLAY FULLER
United States Magistrate Judge