UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

MAR 2 7 2015

JAMES N. HATTEN, Clerk
By: Deputy Clerk

| | |
|---|---|
| **COBREY BENNETT et. al.** ) | **Civil Action No.: 2:13-cv-00243-WCO** |
| ) | |
| **Plaintiffs,** ) | **Judge J. Clay Fuller** |
| ) | |
| **v.** ) | **PLAINTIFFS' OBJECTION TO** |
| ) | **JUDGE FULLER'S R & R** |
| **OCWEN LOAN SERVICING, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

The Plaintiffs, Cobrey & Maryam Bennett, respectfully submits this objection to

Judge Fuller's R & R. Pursuant to OCGA 11-3-302 As well as FRCP 9(b), FRCP 15 2) &

FRCP 15 (d), OCGA § 9-11-60(d)(2) & various criminal violations. We, ask that the

extra page in the brief be excused & allowed, because of the injunction, we had to fit

what all needed to be said in this motion.

### Preamble

First off, we would like to say, that we are not the ones on trial here, but the way we

have been being treated, it sure feels that way.  Also, just because we are filing Pro Se

doesn't mean that we don't have counsel, to whom we refer to when we need help, nor

does it mean we don't know what we are doing. All Pros Se litigants are not the same.

The fact the Judge O'Kelly went off on a rant against Pro Se litigants, without even

looking at the case, he instantly assumed we would be like, other Pro Se litigants, which

is very bias indeed.

The fact that Mr Anderson, had to explain to the judge in our defense, by telling Judge O'Kelly, that a spouse can be added to property documents, without being a debtor, shows that, Judge O'Kelly, did not give this case due diligence.

## Judicial Canon 3 D (2)

Judicial Canon 3 D. Disciplinary Responsibilities states, "2) Judges who receive information indicating a substantial likelihood that a lawyer has committed a violation of the Standards of Conduct of the State Bar of Georgia should take appropriate action. Judges having knowledge* that a lawyer has committed a violation of the Standards of Conduct of the State Bar of Georgia that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority." Keith Anderson has violated RULE 8.4 MISCONDUCT (a) (4) engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation;

We are requesting the Court use the knowledge listed here to report, the numerous crimes that are listed along with evidence to the proper authorities. Mr Anderson, wanted me to stop contacting Ronald Faris, CEO of Ocwen, because we made him aware of the illegal things his company & his counsel were doing, & reported Mr Anderson to his firm for committing misprison,  we have proof that Mr Faris, Mr Erby, & BABC, received the intel, to make sure neither of can claim Plausible Deniability.

Because, the Plaintiffs, have made several members of both BABC (Mr Anderson's firm) & Ocwen's Chief Officers, & neither have done anything to make amends, the

2

Plaintiffs, are demanding the court to pierce the Corporate Veil. In the law accountability is key, if the Justice system doesn't hold all criminals equally accountable for their misdeeds, it makes the justice system seem more like a joke, than the vehicle that is; the vehicle for Justice, for the people by the people, to protect the people, from predatory entities. Such as Ocwen & anyone knowingly & willingly help them. *See* (Western Rock Co. v. David, 432 S.W. 2d 555 (Tex. Ct of Civ. App. 1968))

### Title 18 U.S.C. § 4. Misprision of felony

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the US, conceals & does not as soon as possible make known the same to some judge or other person in civil or military authority under the US, shall be fined under this title should be fined or imprisoned not more than three years, or both.

A federal judge, or any other government official, is required as part of the judge's *mandatory* administrative duties, to receive *any* offer of information of a federal crime. If that judge blocks such report, that block is a felony under related obstruction of justice statutes, & constitutes a serious offense. Upon receiving such information, the judge is then required to make it known to a government law enforcement body that is not themselves involved in the federal crime.

### FRCP 15 (D)

FRCP 15 (d) states: Supplemental Pleadings. On motion & reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be

supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

**Facts**

1. We had been trying to get a loan modification for 2 years, after signing & sending in the modification papers several times, yet receiving no modification, & our payment was a fixed-rate, continued to increase, we went to an outside company in 12/11 that is now defunct.

2. They told us to qualify for the modification, we had to be at least 2 payments behind.

3. Instead of the loan modification we were promised we received, a foreclosure notice in March of 2012.

4. We contacted Selene to find out why, & what we could do to stop the foreclosure. We were offered a forbearance.

5. We had to pay a down payment of $3,500 in March 2012, & paid $4,500 from April-July, after that we paid $2639.28 until October 10, 2012 our last payment before the refi was completed.

6. In May of 2012, we accepted an offer to refinance our home, that would reduce the principal from a position of negative equity, granted through HUD/FHA from Selene Finance, who was working in concert, with Mortgage Services III, LLC.

7. This is a unique opportunity that is only available via Selene Finance. There is no cost

4

to you, & all closing costs will be paid by Selene Finance." *See* (Attachments)

8. To qualify for the FHA negative equity refinance program the homeowners had to owe more on the home, than it was worth.

9. At the time we accepted the offer, our principal balance listed on our 10/12, Statement from Selene was: $252, 894.96, our home appraised for $313, 000. Which means we did not qualify for the FHA program the very premise of the refinance. We had no knowledge of these facts until just recently.

10. FHA guidelines for negative equity refinancing, requires the lender to write-off the unpaid principal balance of the original first mortgage by at least 10%.

11. The refi allowed borrowers who may have been delinquent on their existing loan, but who have successfully completed a trial payment plan that meets the following standards to be eligible for the program: The trial payment plan must require a payment amount which is consistent with the amount the borrower would pay after the refi, if they were to refinance the mortgage under the FHA Short Refinance. If the borrower can make three consecutive on-time monthly payments successfully, they are now eligible for a FHA Short Refinance loan.

12. The monthly payment under the Trial Payment Plan must be calculated using the Short Refinance principal balance requirements, which include: A principal balance that is reduced a minimum of 10% & at a level that would make the loan-to-value (LTV) no greater than 97.75% & combined LTV no greater than 115% Amortized over 30

5

years at a current market rate for FHA fixed-rate loans. Which is not what we got. See (fact 5)

13. Something happened while we were waiting to close, we are not sure what but, we believe it was dual tracking. We got a letter in the mail from Selene, claiming, "That we had been uncooperative & due to that we can't do a forbearance & should consider a short sale." This was untrue as well as a chapter 7 discharge injunction violation. When questioned, MSIII, told us that they had no idea, we were sent the mailing. See (Exhibit)

14. Because of the "**confusion**", even though we had no arrearage, Selene, claimed we did, we ended up paying $2,639.28 from August until October 2012 even though our normal payment was $1,940.49.

15. The October 2012, statement from Selene, also stated our account was delinquent & included $660 in late fees. If this were true we could not have done the refi in Nov of 2012. *See* (Exhibit Statement).

16. When we closed on the loan on November 19, 2012,  our principal had increased from $252, 894.96 to $284,900, & the monthly payment was over $2,000.

17.  After talking to the loan officer the payment was lowered to just over $1,700 more than what it should have been, but better & we were under the impression that Selene, paid the closing cost as well as the loans off, when they really just tacked it on to the new loan further increasing our principal, the opposite of what we agreed to. *See* (Ex)

18. In the (HUD 1) Settlement Statement, line 104 states, "Payoff of first mortgage loan

6

to Selene Finance was $273,418.66. *See* (Exhibit)

19. On Selene's payoff statement in our loan documents, it states, total amount to pay loan in full is $326, 921. There is nothing in the statement that shows cause for the difference in price.

20. According to a Selene rep, a payoff amount is determined by the current principal balance of the loan, plus any accumulated interest during the period from the last payment, late fees (if any) & possibly a payoff service charge along with a recording fee.

21. We had no late fees, the interest on the October statement was $1651.28, the daily interest rate was listed as $33.17 & the total on the interest rate listed in the (HUD 1) was $165.85.

22. On the Uniform Residential Loan Application, prepared by MSIII, the amount of the unpaid balance of the loan with Selene, was listed as $325, 206.00 (a $1.715 difference than the payoff statement listed by Selene) & the monthly payment was listed as $2,010.07.

23. In D.E. 101-1 pages 9-10 is an Allonge from Allquest, dated November 26, 2012 that is not affixed to the note as the law dictates it should, & The Plaintiffs, have a web certified copy of from the GA Secretary of State stating that Allquest, revoked their right to do business in the state of GA on May 16, 2008. See ( Exhibit).

24. The Plaintiffs, also submitted a copy of a call to the Court *See* (Allquest call ), between the Plaintiffs & Allquest, in which Allquest states, "We can not conduct

mortgage transactions in the state of GA."

25. In Ocwen's reply to our qualified written request, they claimed that RPM Mortgage Inc, funded our loan, we issued the court a phone call between, RPM & the Plaintiffs, where RPM, told Maryam Bennett, they are not allowed to handle mortgage transactions in the state of GA. See (Call labeled RPM)

26. The Plaintiffs, also have an online certified copy from the GA Secretary of State showing that on 04/24/2008 that RPM filed to have their license to do business in the state of GA. See (Attachment labeled RPM).

27. The Plaintiffs, sent a new QWR to Ocwen in February 2015, to which Ocwen replied, "We are in litigation with you, & therefore we don't not have to honor your QWR". The Plaintiffs showed Ocwen's Ombudsman that litigation is not one of the accepted exclusions to not honor a QWR.

28. In reply, Ocwen, sent us a letter, telling the Plaintiffs, "We have received your QWR & we will research & we will issue a response on March 13, 2015.

29. On March 13, 2015, we received, the order on the MSJ granting Ocwen, their motion & denying the Plaintiffs' MSJ. The fact that the date Ocwen told us we would get our response, on the same day we got the MSJ order has the appearance of bias and/or ex parte communication.

30. The Court records also show, that Ocwen, claims our loan had been entered into a REMIC, which mean that it was converted into a stock & can no longer be a loan. It

8

also means, the Note is subject to FASB, UCC, & SEC regulations. *See* (D.E. 101-1 pg 33, Ocwen,")

31. Ocwen's entire reply to our qualified written request is false, as well The Note & all the other information, pertaining to the loan that we agreed to, because we were not given what we were promised. There are also several fraudulent documents relating to the Refi origination & Ocwen's acquisition.

32. Due to our fraudulent FHA/HUD principal reduction refinance, when Ocwen reported we defaulted on our loan, the FHA paid off the loan.

33. According to the OCGA § 11-3-302 (a)(1), (a) Subject to subsection (c) of this Code section & subsection (d) of Code Section 11-3-106, "holder in due course" means the holder of an instrument if: (1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity;  The holder in due course status is made null because the instrument is defective.

34. Allquest could not conduct mortgage transactions in the state of GA, which makes the Allonge fraudulent. ie., & nullifies the holder in due course status.

35. Pursuant to the ABA,[1] One of the consequences of the sale of a negotiable note not carried out in accordance with the requirements of the holder in due course doctrine is

---

[1] http://www.americanbar.org/publications/probate_property_magazine_2012/2013/may_june_2013/article_borden_reiss_dirt_lawyers_and_dirty_remics.html

that the purchaser of the note may not be free of the personal defenses that the note maker (the borrower) would have had against the original lender. These personal defenses include lack of consideration, nonperformance, actual payment of the debt, & fraud in the inducement.

36. Which is why Ocwen, **HAD TO** file the fraudulent assignments, which were both filed after this cause, making them invalid.

37. According to Ocwen, As long as a loan account is registered with MERS no assignments are needed. However, once an account is transferred out of MERS, the assignments are completed & recorded more proof that Ocwen had no standing at the inception of this cause. *See* (Exhitbit)

38. The Plaintiffs, would like to make it known, that in Judge Fuller's Final R & R, he completely failed to mention the fact that Ocwen, was collecting money from the Plaintiffs, for escrow to cover taxes & insurance for the property, yet Ocwen's failed to pay, which caused the Plaintiffs' insurance to cancel, which according to the note causes a default.

39. The Plaintiffs, had to pay twice because Ocwen, didn't use the funds the Plaintiffs, paid to escrow, & to pay the insurance with any associated late fees, & had continued to pay until Ocwen, made a late payment for the insurance renewal in December 2013. Which was due in November 2013 this info is on the record.

10

40. Ocwen, has not reimbursed us for the late fees they caused, nor did they pay the Plaintiffs, the difference from the Plaintiffs' escrow. We want our money back with interest.

41. The Plaintiffs, have asked the Defendants, for almost 2 years to validate the debt they claim we owe them, by showing credit/debits through the GAAP & FASB standards to no avail. The FDCPA only allows 30 days to validate a debt.

42. The Plaintiffs' reply to the Defendants' MSJ was that, None of the evidence the Defendants, submitted is valid due to fraud in the inducement & fraud in the factum. Because of the nature of fraud, it is hard to determine what is real & what isn't, & therefore the entire transaction is void. This answer, is our dispute! Fraud viviates the most solemn of contracts, judgments etc.

43. The Plaintiffs, are seeking to expunge the proof of any claim filed on behalf of Allquest through an allonge, with Ocwen, claiming to be the Servicer & any other for that matter.

44. The debtor challenges the creditor's opportunity, to enforce the obligation alleged to be due, based primarily on the fact that underlying note executed by the debtor was not properly indorsed to the transferee, & there is no evidence before the filing of this cause, that shows our note was placed in the possession of Ocwen.

45. Under these circumstances, Ocwen nor Allquest, had any standing when this cause

was filed, & standing at inception, is necessary & incurable. Therefore, they have no claim to our property or money. We are demanding all monies paid to date returned with interest.

46. This action began with an allegation that Ocwen was the servicer for the owner acting on behalf of the owner with the authority to do so, & in appearance, are the present & designated holder of the note. However, on paper, they are holding the note for someone else not sure for who, which is part of the problem. The designated holder for someone else & with authority, quote, unquote, to pursue the present action. There has been no legitimate evidence, whatsoever, before the Court to validate that allegation whatsoever!

47. What the Defendants brought before the Court is a note made payable to another party with no endorsement in the blank or otherwise. Only, an allonge, made out to a party that has no license to conduct mortgage transactions in the state of GA, & nothing granting, this to a third party including but not limited to Ocwen, that shows a time or date of which they received said note. Standing is not today, although today it needs to be as well. It's throughout the case.

48. There has been no legitimate documentary evidence, whatsoever, to show who held the note at the time our suit was filed.

49. The only evidence that we have, to show Ocwen has any involvement in this

transaction at all are two assignments of the note, & both are dated after the suit was filed. As well as forgeries making them invalid.

50. If Ocwen, were in authority, they can enforce the note, if they are designated by the owner of the note to enforce the note. There is no proof Ocwen, had this authority before this cause was filed & the evidence showing Allquest, did is invalid due to their status with the SOS of GA.

51. Suppose you have a party that is in possession of a note, & then there's a succession of servicers, who have some rights as the agent of the owner. Then ultimately, one of those servicers ends up with possession of the note at some point in time, we know not when. Is the that fact alone sufficient to allow a judge to find that there was standing on the day the suit was filed?[2]

52. Pursuant to UCC guidelines, when a Promissory Note is sold, the Note must be endorsed either to a specific entity or in blank & an assignment of deed to a secure trust must occur simultaneously for the Creditor, to remain secure.

53. Original Notes may be endorsed in blank by the Originator, but only if the first endorsement is in blank, then the Note becomes a "Bearer Instrument." When a "Bearer Instrument is used, there must be a delivery & an acceptance receipt to document, both the transfer & delivery of said note. As well as, an acceptance receipt from the Note Bearer, from the Originator, to the Sponsor, & a receipt from the Sponsor, to the

2   https://www.evanmrosen.com/2014/11/03/standing-inception/

13

Depositor, if any step is skipped, the instrument becomes unenforceable.

54. Ocwen, has not given any evidence that shows any of theses steps were followed.

55. The Defendants, along with MSIII, Selene, & Allquest, violated the False Claims Act by knowingly engaging in a pattern of fraudulent activity & business practices that resulted in false applications for mortgage guarantees being presented to HUD.

56. The Defendants' falsified loan documents, manufacture documents, disregarded FHA & HUD regulations, ignored the complete absence of necessary documentation, & where necessary lied about their own employees' income in order to obtain financing or refinancing for a loan.

57. Our loan was government insured. After the U.S. agreed to guarantee the fraudulent loan - based upon the false applications submitted by Defendants & their cohorts. Inevitably Ocwen, found a way to go into default, by posting late payments & not paying the property insurance. They used our loan which they conspired to make, in complete disregard of the qualifications set by the governmental programs.

58. After Ocwen claimed our loan went into default, Defendants knowingly presented a claim for payment of the loan to the government that was both false & based on false information. The Defendants' fraud caused HUD to guarantee our loan, that did not qualify, when it otherwise would not have, & to pay money to the Defendants that was not justly due nor owed.

14

**Arguments and Authorities**

**I. Judicial Notice**

The CFPB consent order Ocwen signed, mentions many of the very things the Plaintiffs complained of, & the reason this cause was filed. It is public information & is also publicly available on the CFPB's website at http://www.consumerfinance.gov/newsroom/cfpb-state-authorities-order-ocwen-to-provide-2-billion-in-relief-to-homeowners-for-servicing-wrongs/. In JAYCEE ATL DEV. v. Providence Bank, 765 SE 2d 536 - Ga: Court of Appeals 2014, The trial court was entitled to, & did take **judicial notice** of this information. *See* OCGA § 24-2-201(b)(2) (allowing court to take **judicial notice** of adjudicative facts that are "capable of accurate & ready determination by resort to sources whose accuracy cannot reasonably be questioned"); See also (*R.S.B. Ventures v. Fed. Deposit Ins. Corp.,* 514 Fed.Appx. 853, 856 (II)(A)(1), n. 2 (11th Cir.2013)

Also, with the unrebutted testimony of Ron Davis, one of Ocwen's former employers. His testimony, which is public knowledge & can be seen here.[3]  In Davis v Ocwen, Mr. Davis, was stated under oath "That it was Ocwen's policy to call & harass customers, mislead them, lie about adjusting their loan, lose payments, or post them late. The very same practices, that caused Ocwen, to debank in 2004, & sign & violate the consent order with US office of Thrift Supervision.

---

3   Davis v Ocwen Federal Bank, 2005 04-CV-1469 Nov. 15, 2005

Our case is very much like Ms Davis's, she was offered & accepted an unsolicited offer for a loan, from a bank, that worked with Ocwen. The bank worked with Ocwen to obtain loans, then send them to Ocwen, for servicing through a pooling & servicing agreement, after which Ocwen then commenced with their illegal practices. Ron Davis's testimony was, submitted for judicial notice, just like the consent order, & it is adjudicative facts that are capable of accurate & ready determination by resort to sources whose accuracy cannot reasonably be questioned which makes it fit for judicial notice.

## II. Motion Practices

The Plaintiffs, would like to know why Judge Fuller in all his listings of the Plaintiffs many filings, that he didn't mention the Motion for Plain Error, which, is not futile & is deserving of an answer & it has been pending since October of 2014, & still it hasn't be ruled on?

Also, the Plaintiffs, would like to know why Judge Fuller, did not rule on the Motion to Compel or even address it for that matter until March 12th ? It too, was filed in October.

The Plaintiffs, would also like to know why in Judge Fuller's first R & R for the Defendant's motion to dismiss, he stated the Plaintiffs, had a claim for Conspiracy, but did not mention other parties with whom they conspired, & yet when we tried to do just that, he denied us the right to do so? This gives yet another example of the appearance of

16

bias.

In Page 3 of D.E. 115 Judge Fuller, stated, "Plaintiffs, remained undeterred, despite their repeated failures at attempts to add claims & parties. Did Judge Fuller take into account that maybe the Plaintiffs, didn't back down, because they knew the had a good reason not to?

Ocwen, sent correspondence stating, " As advised in prior response, the account was registered with MERS no assignments are needed. However, once a loan is transferred out of MERS the assignments are completed & recorded." The record shows that Ocwen, had no assignment regarding our loan until October 2013. We filed our cause in September 2013, which means Ocwen admitted, they had no standing when our cause was filed. If there is no standing at inception which is required, it is incurable.

Ocwen, nor Allquest, had/have any standing, which makes, everything, they have done to us to date illegal.[4] It appears, there is no honor among thieves. Blue Mountain Capital (subsidiary of MSIII), is suing Ocwen, because Ocwen defaulted in their duties as servicer & Master servicer for 119 trust, in the 2012-T2 & 2013-T3 trust series. Our loan was closed in 2012, showing further proof of Ocwen's illegal practices.

Also, Considering when the motion to dismiss was filed, & the fact that discovery had not started, one would think, after discovery, one would assume that the evidence

---

4   http://www.gibbsbruns.com/certificateholders-issue-notice-of-non-performance-identifying-alleged-failures-by-ocwen-financial-corporation-as-servicer-or-master-servicer-to-perform-covenants-and-servicing-agreements-in-119-residential-mortgage-backed-securities-trusts-01-23-2015/

amassed during discovery would be actually used in the case, otherwise, what is the purpose of discovery?

## III. Lack of Standing

On Pg 5 of D.E. 115, Judge Fuller, stated, Ocwen obtained the rights from Mortgage Services III, LLC. Would Judge Fuller please point out where on the record, Ocwen actually showed when they obtained the right to service or when they became the holder in due course? On the added Allonge, it is signed to Allquest. Allquest can not conduct mortgage transactions in the state of GA, the Plaintiffs, gave the Court a phone call where Allquest stated this on record. The Secretary of State website confirms this. Even if Ocwen, did have proof Allquest, gave them rights before the filing of our cause their claims would still be invalid. [5]

## IV. RESPA/FDCPA Violations

On pg 16 of D.E. 115, Judge Fuller, states our QWR focuses mainly on debt validation. We consider it as both & we had filed a violation of the FDCPA cause of action. The FDCPA allows on 30 days to validate a debt it has been almost two year & Ocwen, still hasn't validated the debt, to date.

Judge Fuller also states, "Even if this correspondence did qualify as a QWR, Defendant's response was sufficient to prevent any actual damages to the Plaintiffs, which can be attributed to any shortcomings. This statement is incorrect. Can false

---

5   http://www.creditslips.org/files/kemp-v.-countrywide.-wizmur.-11.16.2010.pdf

answers in a QWR response count as sufficient?

We sent the first QWR in April. Due to the false information, on the HUD-1 statement, Ocwen is still liable for RESPA violations, as well as Selene & MSIII. The failure to validate the debt in 30 days is a FDCPA violation, as is the harassment & false reporting to the credit bureaus. You can not validate a debt, using false information.

Again the allonge is beyond a shadow of a doubt invalid, due to the revocation of Allquest's license. There is nothing on paper that shows, the date Ocwen supposedly gained possession of the note before this case was filed. The assignments after the filing, doesn't create standing after the fact, & the Plaintiffs, showed the Court proof that the assignments were false. We suffered emotional damages, because the entire transaction was/is fraudulent. Also, all the monies paid by the Plaintiffs should be returned with interest.

## V. The Entire Transaction Between The Plaintiffs, Ocwen, MSIII, Allquest & Selene has been Fraudulent since its inception.

"A contract to do an illegal thing is void." Code § 20-501.  17 AmJur2d 521, Contracts, § 165 (1964). For a contract to be illegal under this principle the purpose or object of the contract must be illegal. See, e.g., *Abbott Furniture Co. v. Mobley,* 141 Ga. 456 (81 SE 196); *Kessler v. Pearson,* 126 Ga. 725 (1) (55 SE 963); *Wright Co. v. Haralson,* 52 Ga. App. 27 (182 SE 55). We have proved the FHA/HUD loan that was submitted was done

so under false pretenses.

According to the refinance we agreed to, we were to be getting a FHA short finance loan for homeowners who had negative equity. We were offered this refinance unsolicited to us by Selene, instead of the loan modification we had tried to obtain for years, through MSIII. MSIII, supposedly, sold the loan to Allquest in December, & somewhere in between, Ocwen, became the holder in due course, we know not when.

The main FHA requirements for the short finance was that the homeowners, had to be under water on their loan. We did not know this, we were told that Selene, was going to pay all of our closing cost, payoff our student loan, as well as the lien for the second mortgage, which was discharged in our bankruptcy, & to reduce the principal balance & our payments.

Selene offered us a chance to do a refi exclusively through them, they promised the refi would lower our payments, lower our principal balance, because they claimed we were under water, & they promised to pay off the second lien from the 2nd mortgage, a student loan, & all closing cost. They did not do any of this which makes it fraud in the factum, *See* (**fraud** in the **factum**, are the so-called `real defenses' of the type outlined in the UCC § 3-305 FDIC v. Balistreri, 470 FSupp. 752, 756 (E. D. Wisc. 1979). The Selene did not pay of anything. Not the closing cost, student loan, nor the lien from the 2nd Mortgage tacked it all on the back end of our mortgage, raising our principal $40,000

We closed on the refi, on November 19, 2012. Our October statement from Selene dated 10/10/12, shows our principal balance was $252,894.96. The payoff amount to pay off Selene dated November 13, 2012 was listed as $326, 921, & the Uniform Residential Loan Application had the payoff amount as $325,206.00. There is a $1715.00 difference that is unaccounted for.

On 02/19/2013 Selene, assigned themselves the note & then canceled the assignment on the same day. The assignment was made on 02/19/2013 & the trust SRMOF REO 2011-1 was closed on 01/2011, & is also more proof of fraud. Once a trust is closed, in this case 2011-1 no further items can be transferred into it.

The only transfer of title on record, is an allonge from Allquest. Whom have since stated that could not conduct mortgage transactions in GA. It was supposedly signed in November 2012 by Allquest, which is fraud, & it makes null the holder in due course status, under the standards of the UCC.

Due to the fact that they have no authority to do business in the state of GA, which means that any monies paid, during the course of this fraudulent transaction is illegal, & the Plaintiffs, have a right to Recoupment under the UCC. As well as all the fees, & harassment, ruination of the Plaintiffs credit, we have had to endure since its initial contract with Selene. We have a right to relief under the law.

Due to the forbearance agreement we were not in arrears, our interest rate was $33.17

a day, there were no late fees, our interest rate was 6% & the corporate advance was

only $768.25 & our monthly payment according to the statement was $1651.28 (We

were paying $2639.28). Yet, Selene claims we had $660. in late fees.

Because we were fraudulently induced into entering a contract we may elect one of

two remedies: "affirm the contract & sue to recover damages for its breach or rescind

the contract & sue in tort to recover damages for **fraud**." *Dyer v. Honea,* 252 Ga. App.

735, 739(3)(a), 557 S.E.2d 20 (2001).

Selene, & Mortgage Services III, LLC supposedly set us up for negative equity loan,

through HUD. In order to qualify the principal balance, had to be greater than the

house's value. According to Selene's statement dated 10/10/2012 our principal was

$252,894.96, our appraisal, said our home was valued at $313,000. *See* (Exhibit) Which

shows that the numbers were doctored to make it fit HUD's requirements all the while

lying to us & robbing us blind & lying to HUD to get more tax breaks & their fake loan

paid off.

## VI. Abuse of Process and Malicious Prosecution

As far as the Plaintiffs & vexatious litigation is concerned, the Plaintiffs, sent Ocwen

a cease & desist in October of 2013, & yet Ocwen, has continued to send us mailings.

We made the Court aware of this & nothing was done. Yet, we are having our case

dismissed because we were filing motions in an attempt to stop Ocwen, from further

22

harassing us & filing false information with credit bureaus because the Court did not do anything to stop them. This is the exact opposite of justice.

Ocwen, has not been suffering any damages because of us, however, Ocwen, is causing the Plaintiffs, damage & in appearances, it seems the court is aiding them in doing so. The evidence that support each of our claims has been ignored as well as our pleas for aid in getting the Defendants, to co-operate with discovery.

Due to the fraud, Ocwen, has no legal basis for any of their actions to date. Pursuant to FRCP 15 2) The court should freely give leave when justice so requires. Our cause so requires & should be given leave. Not allowing us the right to do so has the appearance of bias.

Also, we reported the filing of the false assignments to the Court, it too has been ignored. If the Court had addressed the 1st criminal affidavit the Plaintiffs, filed in they could have gone a long way in stopping Ocwen's abuse of the Plaintiffs. Instead, when the Plaintiff tried to find ways to lessen the damages caused by the abuse from Ocwen, the Court joined in on the intimidation, & threats. See (hearing transcript 2/19/15.)

Pursuant to O.C.G.A. § 51-7-84 we will consider this notice to the Defendants & their Counsel, that if they don't stop, their abuse & trying to fraudulently steal our home, & withdraw, their fraudulent claims on our home & sign a full reconveyance of our home, Ocwen, BABC, Ronald Faris, Keith Anderson, & Beau Grenier, will be liable for

abusive litigation pursuant to O.C.G.A. § 51-7-81. *See* (*Owens v. Generali-U.S. Branch,* supra at 295, 480 S.E.2d 863.)

Mr Faris & Mr Grenier were both made aware of what was happening, we have proof they got it, & to date have not done anything to our knowledge to fix it. In addition to the Plaintiffs, request for the Court to notify the proper authorities, we will be sending a copy of the new criminal affidavit to the FBI & HUD, etc.

## VII. Fraud viviates the most solemn contract

Fraud viviates the most solemn of contracts, judgments, etc. *International Milling Co. v. Priem*, 179 Wis. 622 (Wis. 1923). The Plaintiffs, have given the court more than enough evidence to show that, Ocwen, MSIII, Allquest, & Selene has committed fraud upon us, as well as the court; with the help of their counsel.

According to one of the many phone calls the Plaintiffs submitted, there is a call labeled Mortgage Services III, the customer service rep stated, that their company sold, our loan to Allquest, in December of 2012. Ocwen, was not mentioned, & Allquest can't conduct mortgage transactions in GA. In Kemp v Countrywide the judge stated, "In accordance with UCC requirements, it requires that physical transfer of the note in accordance with an endorsement. There is recognition of lack of possession & lack of endorsement at the time this case was filed & as of the time the proof of claim was filed. Those things are uncontested."

As is the case here. Ocwen, lacked any physical proof of being the holder in due course at the time this cause was filed. The lack of standing is required at commencement, & is incurable. See (*Progressive v. McGrath*, 913 So.2d 1281 (Fla. 2nd DCA 2005). Making everything Ocwen, Selene, Allquest, MSIII, & Citi (it all started with Citi) has been done to the Plaintiffs, to date, illegal, cruel, intentionally reckless, outrageous; & the Defendant's & their co-conspirators acts are the cause of severe emotional distress that has lasted for years.

There has been no documentary evidence, whatsoever, to show who held the note at the time the suit was filed. In fact, there is no evidence at all to show that Ocwen was given possession of the note before this cause was filed. Including the note & the allonge on record.

The entire transaction was both fraudulent in the inducement & fraudulent in the factum. As well as several criminal violations including but not limited to 18 U.S.C. § 1001, 18 U.S. Code § 1014, 18 U.S.C. § 1028, 18 U.S. Code § 1010,18 U.S. Code § 1341, & violated the Federal False Claim act.

## XI. FRCP 15 allows Amended and Supplemental Pleadings

With all do respect, when the Court via Judge Fuller, decided on the initial motion to dismiss by the defense, discovery hadn't been completed. Neither did the Court, enforce the Plaintiffs, subpoena issued to Allquest nor make Ocwen, adhere to the rules of

discovery once the Plaintiffs, cause survived the motion to dismiss, the Court

inadvertently caused the illegal actions of the Defendants, continue by failing to act on

the mounds of evidence given to them by the Plaintiffs.

Due to this the Plaintiffs, were not able to properly show that they are/were entitled

to relief. Even with this being the case, once we showed proof of fraud, that was more

than enough for the Court to take notice. Since Judge Fuller's initial R & R was done,

much has been discovered. In order for justice to be met, the Court must give the new

evidence & findings due process, if not the Court will be infringing upon the Plaintiffs

civil rights, & helping the Defendants, commit Misprision.

## CONCLUSION

Judge Fuller's R & R, is based on false evidence, & from the Court's lack of

consideration of the Plaintiffs' evidence, which shows the Defendants, were placing

fraud upon the court. The information, Judge Fuller used to make his decisions,

regarding this cause, have no legal standing due to the fraud & therefore can not be used

to dismissed this cause. Due to this, we are demanding, the Court actually consider the

evidence presented by the Plaintiffs, use the relate back clause in FRCP 15 & reconsider

the claims, of RICO, IIED, Fraud & Deceit, Loss of Consortium, FDCPA, RESPA,

Conversion, Punitive Damages, Fraud & Deceit Conspiracy, & Tortious Interference Of

Property Rights.

Respectfully Submitted,                                     March 26, 2015

*Maryam Bennett*

Cobrey & Maryam Bennett                    Phone: 678-689-9601
Pro Se Litigants                           Fax: 770-887-3109
965 Summerfield Dr                         email: maryamthomas@hotmail.com

27

The Plaintiffs hereby declares that a copy of this motion will be sent to defense counsels

on the same day a copy is mailed to the court.

*Maryam Bennett*                                March 26, 2015

Cobrey and Maryam Bennett
Pro Se Litigants
965 Summerfield Dr
Cumming, GA 30040
Phone: 678-689-9601
Fax: 770-887-3109
Email: maryamthomas@hotmail.com